1
J. Christopher Jaczko (149317)
Allison H. Goddard (211098)
2
JACZKO GODDARD LLP
4401 Eastgate Mall
3
San Diego, California 92121
Phone: (858) 550-6150
Fax: (858) 225-3500
4

Dean D. Niro (*Pro Hac Vice*)
5
Robert A. Conley (*Pro Hac Vice*)
NIRO, SCAVONE, HALLER & NIRO
6
181 West Madison, Suite 4600
Chicago, Illinois  60602
7
Phone: (312) 236-0733
Fax: (312) 236-3137

8
Attorneys for CONAIR CORPORATION

9
### IN THE UNITED STATES DISTRICT COURT

10
### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11
| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST, | Case No. 08cv1256 BTM (CAB) |
| | |
| Plaintiff, | **NOTICE OF MOTION AND CONAIR CORPORATION'S MOTION TO STAY THE LITIGATION PENDING THE OUTCOME OF REEXAMINATION PROCEEDINGS** |
| v. | |
| CONAIR CORPORATION, a Delaware Corporation; and DOES 1-100, | |
| Defendants. | Date:   September 26, 2008<br>Time:   11:00 am<br>Courtroom 15, Fifth Floor<br>Hon. Barry Ted Moskowitz |
| CONAIR CORPORATION, | |
| Counter-Plaintiff, | NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |
| v. | |
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARH AND DEVELOPMENT TRUST, | |
| Counter-Defendant. | |

1    NOTICE IS HEREBY GIVEN that on September 26, 2008, at 11:00 a.m., or as soon

2    thereafter as the matter may be heard by the above-entitled Court, located at 940 Front Street,

3    San Diego, CA 92101-8900, Defendant Conair Corporation ("Conair") will and hereby does

4    respectfully move for a stay of the above-captioned proceeding pending the outcome of the

5    United States Patent & Trademark Office's ("PTO") reexamination of the patent-in-suit, U.S.

6    Patent No. 4,935,184 ("the '184 patent").

7    Plaintiff, Jens Erik Sorensen, as Trustee of Sorensen Research and Development Trust

8    ("Sorensen"), filed his Complaint against Conair on July 11, 2008. Counting the instant case

9    against Conair, there are presently 25 separate actions pending before this Court in which

10   Sorensen has alleged infringement of the '184 patent by various defendants. As this Court is

11   well aware, nearly every one of these 25 cases has been stayed pending the outcome of the

12   PTO's ongoing reexamination of the '184 patent. The facts of the instant case between Sorensen

13   and Conair provide no basis for a departure from the analysis and reasoning which this Court

14   has now repeatedly applied in the course of ordering that the host of other pending Sorensen

15   cases involving the '184 patent be stayed. A stay of the instant case is likewise appropriate.

16   A stay is particularly warranted given the current status of this case. Sorensen filed his

17   Complaint just over one month ago, and filed an Amended Complaint approximately one week

18   ago. There has been no ENE conference or case management conference. The parties have not

19   yet exchanged Rule 26(a)(1) initial disclosures. There has been no discovery, no dispositive

20   motions have been submitted, and no trial date has been set. A stay will not only conserve the

21   resources of both the Court and the parties, but will also provide the benefit of simplifying (if

22   not eliminating) the issues for trial. Furthermore, all of these benefits will come at no prejudice

23   to Sorensen.

24

For the reasons set forth in greater detail in the supporting memorandum and related pleadings submitted herewith, Conair respectfully requests that the Court order this case stayed pending completion of the PTO's ongoing reexamination of the '184 patent.


Dated: August 13, 2008                    JACZKO GODDARD LLP

                                          NIRO SCAVONE HALLER & NIRO


                                          By:    /s/ Allison H. Goddard
                                          Allison H. Goddard
                                          Attorneys for Defendant and Counter-Plaintiff
                                          CONAIR CORPORATION

**PROOF OF SERVICE**

I hereby certify that on August 13, 2008, I caused the foregoing **NOTICE OF MOTION AND CONAIR CORPORATION'S MOTION TO STAY THE LITIGATION PENDING THE OUTCOME OF REEXAMINATION PROCEEDINGS** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

> J. Michael Kaler (158296)
> KALER LAW OFFICES
> 9930 Mesa Rim Road, Suite 200
> San Diego, California 92121
> Phone: (858) 362-3151
> Fax: (858) 824-9073
> michael@kalerlaw.com
>
> Melody A. Kramer (169984)
> KRAMER LAW OFFICE
> 9930 Mesa Rim Road, Suite 1600
> San Diego, California 92121
> Phone: (858) 362-3150
> Fax: (858) 824-9073
> mak@kramerlawip.com
>
> *Attorneys for Plaintiff*

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

> /s/ Allison H. Goddard
> Attorney for Conair Corporation

1    J. Christopher Jaczko (149317)
    Allison H. Goddard (211098)
2    JACZKO GODDARD LLP
    4401 Eastgate Mall
3    San Diego, California 92121
    Phone: (858) 550-6150
    Fax: (858) 225-3500
4

5    Dean D. Niro *(Pro Hac Vice)*
    Robert A. Conley *(Pro Hac Vice)*
    NIRO, SCAVONE, HALLER & NIRO
6    181 West Madison, Suite 4600
    Chicago, Illinois  60602
7    Phone: (312) 236-0733
    Fax: (312) 236-3137

8    Attorneys for CONAIR CORPORATION

9         **IN THE UNITED STATES DISTRICT COURT**

10       **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 11   JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST, | Case No. 08cv1256 BTM (CAB) |
| 12 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONAIR CORPORATION'S MOTION TO STAY THE LITIGATION PENDING THE OUTCOME OF REEXAMINATION PROCEEDINGS** |
| 13         Plaintiff, | |
| 13    v. | |
| 14   CONAIR CORPORATION, a Delaware Corporation; and DOES 1-100, | |
| 15         Defendants. | Date:   September 26, 2008 Time:  11:00 am |
| 16   CONAIR CORPORATION, | Courtroom 15, Fifth Floor Hon. Barry Ted Moskowitz |
| 17         Counter-Plaintiff, | |
| 18    v. | NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |
| 19   JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARH AND DEVELOPMENT TRUST, | |
| 20 | |
| 21         Counter-Defendant. | |

22

23

24

Defendant Conair Corporation ("Conair") respectfully moves for a stay of the above-captioned proceeding pending the outcome of the United States Patent & Trademark Office's ("PTO") reexamination of the patent-in-suit, U.S. Patent No. 4,935,184 ("the '184 patent").

## I.     BACKGROUND

Plaintiff, Jens Erik Sorensen, as Trustee of Sorensen Research and Development Trust ("Sorensen"), filed a Complaint against Conair on July 11, 2008.  Counting the instant case against Conair, there are presently 25 separate actions pending before this Court in which Sorensen has alleged infringement of the '184 patent by various defendants.[1]  As this Court is well aware, nearly every one of these 25 cases has been stayed pending the outcome of the PTO's ongoing reexamination of the '184 patent.[2]  The facts of the instant case between Sorensen and Conair provide no basis for a departure from the analysis and reasoning which this Court has now repeatedly applied in the course of ordering that the host of other pending Sorensen cases involving the '184 patent be stayed.  A stay of the instant case is likewise appropriate, and Conair's motion should accordingly be granted.

## II.    STATUS OF THE REEXAMINATION PROCEEDINGS

Sorensen's '184 patent is presently the subject of two reexamination proceedings pending before the PTO.  In the first proceeding (Reexamination Control No. 90/008,775), the PTO ordered reexamination of the '184 patent on October 11, 2007.  (Exhibit A, Transaction History

---

[1]     Pursuant to the Court's "Low Number Rule," all 25 of these cases have been assigned to Judge Moskowitz and Magistrate Judge Bencivengo.

[2]     The only cases which have not yet been stayed are Case Nos. 08cv25, 08cv232, 08cv559 and 08cv1080.  In Case No. 08cv25, the Clerk has entered a notice of default against the named defendant for failure to plead or otherwise defend.  In Case Nos. 08cv232 and 08cv559, the Court has entered an order instructing the parties not to file any additional briefing on pending motions until the Court resolves the issue of whether these cases should be stayed. In Case No. 08cv1080, the named defendant has filed a motion to stay the litigation, but briefing on the issue has not yet been completed and no decision has been entered by the Court.  All of the remaining cases pending before this Court in which Sorensen has alleged infringement of the '184 patent have been stayed.

1    of Reexamination Control No. 90/008,775).[3]  In the second proceeding (Reexamination Control

2    No. 90/008,976), the PTO ordered reexamination of the '184 patent on February 21, 2008.

3    (Exhibit B, Transaction History of Reexamination Control No. 90/008,976).  Although the PTO

4    has not yet issued a substantive office action in either proceeding, the issuance of such an office

5    action in one or both of the proceedings is likely imminent.  Indeed, the PTO is required to

6    conduct reexamination proceedings with "special dispatch," and priority is given to proceedings

7    in which the subject patent (here, the '184 patent) is concurrently involved in litigation.  *Manual*

8    *of Patent Examining Procedure* § 2261 ("Any cases involved in litigation, whether they are

9    reexamination proceedings or reissue applications, will have priority over all other cases.")

10   (Exhibit 1).[4]  Having recently conducted an extensive "Reexam Litigation Search", the PTO is

11   well aware that the '184 patent is presently involved in more than twenty lawsuits pending

12   before this Court.  (Exhibit B, Transaction History of Reexamination Control No. 90/008,976).

13   **III.    LEGAL STANDARD FOR A STAY PENDING PTO REEXAMINATION**

14           Courts have inherent power to stay an action pending conclusion of PTO reexamination

15   proceedings.  *Ethicon v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *Sorensen v. Black &*

16   *Decker Corp.*, 2007 U.S. Dist. LEXIS 66712, *10 (S.D. Cal. Sept. 10, 2007) (Moskowitz, J.,

17   presiding) (Exhibit 2); *SKF Condition Monitoring, Inc. v. SAT Corp.*, 2008 U.S. Dist. LEXIS

18   24310, *17 (S.D. Cal. Feb. 26, 2008) (Moskowitz, J., presiding) (Exhibit 3).   Determining

19   whether to grant a stay pending the outcome of the PTO's reexamination is a matter soundly

20   within the discretion of the district court.  *Sorensen*, 2007 U.S. Dist. LEXIS 66712 at *10; *SKF*

21   *Condition*, 2008 U.S. Dist. LEXIS 24310 at*17; *see also Photoflex Prods., Inc. v. Circa 3 LLC*,

22

23           [3]     Exhibits A and B are appended to the Declaration of Robert A. Conley,
         submitted herewith.

24           [4]     Exhibits 1-9 are appended to the Notice of Lodging of Authorities, submitted
         herewith.

2006 U.S. Dist. LEXIS 37743, *2-3 (N.D. Cal. May 24, 2006) (Exhibit 4). There is a "liberal policy" in favor of granting motions to stay proceedings pending the outcome of PTO reexamination proceedings. *Sorensen*, 2007 U.S. Dist. LEXIS 66712 at *10; *SKF Condition*, 2008 U.S. Dist. LEXIS 24310 at *18; *Photoflex Prods.*, 2006 U.S. Dist. LEXIS 37743 at *3; *Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*, 2007 U.S. Dist. LEXIS 18785, *4 (N.D. Cal. Feb. 26, 2007) (Exhibit 5).

When ruling on such a stay, courts have considered the following factors: (1) the stage of litigation, i.e., whether discovery is almost complete and whether a trial date has been set; (2) whether a stay would cause undue prejudice or present a clear disadvantage to the non-moving party, and (3) whether a stay will simplify the issues in question and streamline the trial. *Sorensen*, 2007 U.S. Dist. LEXIS 66712 at *10-11; *SKF Condition*, 2008 U.S. Dist. LEXIS 24310 at *18; *Photoflex Prods. LLC*, 2006 U.S. Dist. LEXIS 37743 at *3; *Nanometrics*, 2007 U.S. Dist. LEXIS 18785 at *4.

In this case, each and every relevant consideration weighs **<u>heavily</u>** in favor of staying the present litigation pending the outcome of the PTO's reexamination of the '184 patent.

## IV.  A STAY OF THE LITIGATION PENDING THE OUTCOME OF THE PTO'S REEXAMINATION OF THE '184 PATENT IS WARRANTED

A stay in this case is particularly appropriate for at least the following reasons: (1) this case is at its initial stage, and there has been no discovery; (2) Sorensen will not be prejudiced by a stay; and (3) a stay will simplify the issues for trial and reduce the burden of litigation on the parties as well as the Court.

### A.    The Early Stage Of This Litigation Favors A Stay

This litigation is still in its nascent stages. Sorensen filed his Complaint just over one month ago, and filed an Amended Complaint approximately one week ago. There has been no ENE conference or case management conference. The parties have not yet exchanged Rule

- 3 -                              Case No. 08cv1256 BTM (CAB)

26(a)(1) initial disclosures. There has been no discovery, no dispositive motions have been submitted, and no trial date has been set. Numerous courts have found that stays are particularly appropriate under such circumstances. See, e.g., *Tse v. Apple, Inc.*, 2007 U.S. Dist. LEXIS 76521, *4-8 (N.D. Cal. Oct. 4, 2007) ("A stay is particularly appropriate for cases in the initial stages of litigation or in which there has been little discovery.") (Exhibit 6); *SKF Condition*, 2008 U.S. Dist. LEXIS 24310 at *18; *Sorensen v. Digital Networks North America Inc.*, 2008 U.S. Dist. LEXIS 6454, *4-5 (N.D. Cal. Jan. 16, 2008) (Exhibit 7); *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 U.S. Dist. LEXIS 15754, *5-6 (N.D. Cal. Mar. 16, 2006) (Exhibit 8); *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F.Supp. 1378, 1381 (N.D. Cal. 1994). This factor clearly favors a stay.

**B.     Sorensen Will Not Be Prejudiced By A Stay**

A stay of the instant litigation will not prejudice Sorensen in any way. A stay will not prejudice Sorensen's right to collect damages (assuming there are any), as Sorensen will retain an adequate remedy at law should the '184 patent survive the reexamination proceedings. The '184 patent expired in February of 2008. Accordingly, Sorensen is not entitled to an injunction against Conair in the instant case. Rather, Sorensen's claim against Conair is solely for past monetary damages – damages which will not change regardless of whether this case is stayed. As this Court has expressly recognized, should the '184 patent survive the reexamination proceedings and Sorensen is able to ultimately prevail on his claim of patent infringement, an award of past monetary damages, together with prejudgment interest, is "fully capable of compensating [Sorensen]." *Sorensen*, 2007 U.S. Dist. LEXIS 66712 at *13-14; see also *SKF Condition*, 2008 U.S. Dist. LEXIS 24310 at *19-20.

Sorensen will likely suggest that he would be prejudiced by a stay due to the potential length of the ongoing reexamination proceedings before the PTO. This argument is without

1  merit.  As this Court has recognized, "the general prejudice of having to wait for resolution [of a

2  reexamination proceeding] is not a persuasive reason to deny the motion for stay."  *Sorensen*,

3  2007 U.S. Dist. LEXIS 66712 at *14.  In this regard, courts have repeatedly held that the delay

4  inherent to the reexamination process does not constitute, by itself, undue prejudice.  See e.g.,

5  *Sorensen*, 2008 U.S. Dist. LEXIS 6454 at *5; *SKF Condition*, 2008 U.S. Dist. LEXIS 24310 at

6  *20; *Tse*, 2007 U.S. Dist. LEXIS 76521 at *11-12; *Photoflex Prods.*, 2006 U.S. Dist. LEXIS

7  37743 at *7; *Nanometrics*, 2007 U.S. Dist. LEXIS 18785 at *9; *KLA-Tencor*, 2006 U.S. Dist.

8  LEXIS 15754 at *7.  Some delay in the instant litigation "is more than off-set by increased

9  certainty of whether this single patent [the '184 patent] will survive reexamination and whether

10 there will be any need for litigation."  *Nanometrics*, 2007 U.S. Dist. LEXIS 18785 at *10.

11 There accordingly is no prejudice to Sorensen should a stay be entered in this case.

12        While Sorensen will suffer no prejudice from entry of a stay in this case, Conair could

13 potentially be prejudiced should a stay **not** be entered.  As this Court has recognized, the

14 Federal Circuit has confirmed that the PTO need not be bound by the determinations of district

15 courts while conducting reexamination proceedings.  *Sorensen*, 2007 U.S. Dist. LEXIS 66712 at

16 *14-15, citing *In re Trans Texas Holdings Corp.*, 498 F.3d 1290, 1296-98 (Fed. Cir. 2007).

17 Conair could accordingly be faced with the following predicament should the Court not stay this

18 case:

19        Not only could the Court and the PTO reach conflicting determinations, but one
          possible scenario could result in irreparable harm to [Defendant]: if this Court
20        finds that the [patent] is not invalid and that [Defendant] has infringed it, and
          orders [Defendant] to pay damages to [Plaintiff] for such infringement, then
21        [Defendant] would have no ability to recover those damages if at a later date the
          PTO determined that the [] patent is invalid.
22

23 *Sorensen*, 2007 U.S. Dist. LEXIS 66712 at *15, citing *Bausch & Lomb, Inc. v. Alcon Lab., Inc.*,

24 914 F.Supp. 951, 952 (W.D.N.Y. 1996).  The possibility of such a scenario, which this Court

1    has described as a "highly undesirable outcome," can be eliminated by entry of a stay in this

2    case.  *Sorensen*, 2007 U.S. Dist. LEXIS 66712 at *15.

3        In sum, there simply is no identifiable prejudice which would impact Sorensen as a

4    result of a stay being entered in this case.  On the other hand, failure to enter a stay in this case

5    would put Conair at risk of irreparable harm.  Accordingly, this factor clearly favors a stay.

6    **C.    A Stay Will Simplify The Issues For Trial, And May Even Eliminate The Need For A Trial Altogether**

7        "A stay is particularly justified where the outcome of the reexamination would be likely

8    to assist the court in determining patent validity and, if the claims were cancelled in the

9    reexamination, would eliminate the need to try the infringement issue."  See *In re Cygnus*

10   *Telecommunications Tech., LLC Patent Litigation*, 385 F.Supp.2d 1022, 1023 (N.D. Cal. 2005).

11   With respect to the issue of patent claim validity, the Federal Circuit has recognized that the

12   reexamination procedure serves to "eliminate trial of that issue (when the claim is cancelled) or

13   to facilitate trial of the issue by providing a district court with the expert view of the PTO (when

14   a claim survives the reexamination proceeding)."  *Gould v. Control Laser Corp.*, 705 F.2d 1340,

15   1342 (Fed. Cir. 1983).  This Court has previously acknowledged the multiple benefits which it

16   will receive from the PTO's evaluation of Sorensen's '184 patent:

17       The Court believes that it will benefit from the PTO's evaluation of how the
18       previously unconsidered prior art references impact the claims of the ['184
         patent].  The PTO's expert evaluation is likely to be of assistance not only as to
19       the issues of validity, but its understanding of the claims is also likely to aid this
         Court in the preliminary process of claim construction.
20
     *Sorensen*, 2007 U.S. Dist. LEXIS 66712 at *16-17.  While a stay of the instant litigation

21   between Sorensen and Conair is particularly justified for this reason alone, there is more.

22       As the Court is well aware, the '184 patent expired in February of 2008.  This is an

23   especially compelling fact because, unlike most reexamination proceedings, Sorensen will not

24   be afforded the opportunity of amending the claims of the '184 patent:

*No enlargement of claim scope.*  No amendment may enlarge the scope of the claims of the patent or introduce new matter.  **No amendment may be proposed for entry in an expired patent.  Moreover, no amendment, other than the cancellation of claims, will be incorporated into the patent by a certificate issued after the expiration of the patent.**

37 C.F.R. §1.530(j) (emphasis added);

> **The cancellation of the original patent claims is the only "amendatory" change permitted in an expired patent.**

*Manual of Patent Examining Procedure* § 2250 (III) (emphasis added) (Exhibit 1).  Simply put, the claims of the '184 patent (as well as Sorensen's ability to assert infringement thereof) will live or die with the reexamination proceedings without change.  The impact of this fact is not inconsequential:

> The Court finds that, **especially in this case**, the reexamination process has the potential to significantly narrow the issues for trial **because of the impending expiration of the '184 patent.**  While the parties have argued at length about exactly how this additional variable affects the calculation of the likely outcome of reexamination, the Court need not resolve this dispute to reach the proper conclusion.  It is enough to note that when reexamination is requested by a third party, as in this case, all claims are confirmed only 29% of the time.  (See PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. #180-3).  **Since no amendments can be offered to an expired patent, there is obviously a significant likelihood that the validity of the claims at issue in this action will be affected by the reexamination process.**

*Sorensen*, 2007 U.S. Dist. LEXIS 66712 at *17 (emphasis added).  The "significant likelihood" that the validity of the claims of the '184 patent will be impacted by the ongoing reexamination proceedings is all the more reason for the Court to stay this case.

There can be no dispute that the PTO's reexamination of the '184 patent will, at a minimum, simplify the issues for trial in this case.  This will hold true even if every claim of the '184 patent manages to survive the reexamination process.  If, on the other hand, one or more claims of the '184 patent do not survive the reexamination process, Sorensen's ability to assert infringement of such claim(s) will terminate, and the issues before this Court will be further narrowed.  Finally, if no claim of the '184 patent survives the reexamination process, the need

for a trial before this Court on Sorensen's infringement claim against Conair would be altogether eliminated.  Under any one of these three scenarios, a stay of the instant case will reduce the burdens associated with litigation (such as cost and time) for not only the parties, but the Court as well.  There is simply no sense in wasting the resources of the parties and the Court by litigating over issues that may ultimately be rendered moot by the outcome of the PTO's reexamination proceedings.  All of the costs and time inherent to litigating this case can be greatly reduced (if not eliminated) by entry of a stay, with no prejudice to Sorensen.  A stay is particularly appropriate under these circumstances.

## V.     CONAIR HAS NO OBJECTION TO THE CONDITIONS WHICH THIS COURT HAS ATTACHED TO STAYS ENTERED IN OTHER CASES INVOLVING SORENSEN'S '184 PATENT

In the course of entering stays in the twenty-some odd cases involving the '184 patent which Sorensen presently has pending before it, this Court has attached several conditions to its orders.

One such condition requires that the defendant "identify and submit any relevant prior art that is not already being considered by the United States Patent Office as soon as possible to facilitate the completion of the reexamination process within a reasonable period of time." *Sorensen v. Rally Mfg., Inc.*, Case No. 08cv305, Doc. #15 (S.D. Cal. Apr. 25, 2008) (Exhibit 9). Conair has no objection to this condition, and will identify and submit to Sorensen any relevant prior art that is presently known to Conair (exclusive of that already before the PTO) within two weeks of the Court's entry of a stay in this case.

A second condition provides that "any party may apply to the Court for an exception to the stay if it has specific, valid reasons to believe that it needs to obtain discovery in order to preserve evidence that will otherwise be unavailable after the stay." *Id.*  Conair has no objection to this condition either, so long as Sorensen does not perceive the condition to be an unfettered

1    license authorizing Sorensen to conduct a fishing expedition with respect to Conair's business

2    operations.  In this regard, Conair acknowledges its duty to preserve evidence within its custody

3    or control pertaining to Sorensen's claim of patent infringement.

4    **VI.    CONCLUSION**

5         For all of the foregoing reasons, Conair respectfully requests that the Court order this

6    case stayed pending the outcome of the PTO's reexamination of the '184 patent.

7

8    Dated:    August 13, 2008          JACZKO GODDARD LLP

9                                 NIRO SCAVONE HALLER & NIRO

10

11                       By:    /s/ Allison H. Goddard                    

12                                 Allison H. Goddard
                                  Attorneys for Defendant and Counter-Plaintiff
                                  CONAIR CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

**PROOF OF SERVICE**

I hereby certify that on August 13, 2008, I caused the foregoing **MEMORANDUM IN SUPPORT OF CONAIR CORPORATION'S MOTION TO STAY THE LITIGATION PENDING THE OUTCOME OF REEXAMINATION PROCEEDINGS** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

> J. Michael Kaler (158296)
> KALER LAW OFFICES
> 9930 Mesa Rim Road, Suite 200
> San Diego, California 92121
> Phone: (858) 362-3151
> Fax: (858) 824-9073
> michael@kalerlaw.com
>
> Melody A. Kramer (169984)
> KRAMER LAW OFFICE
> 9930 Mesa Rim Road, Suite 1600
> San Diego, California 92121
> Phone: (858) 362-3150
> Fax: (858) 824-9073
> mak@kramerlawip.com
>
> *Attorneys for Plaintiff*

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

> /s/ Allison H. Goddard
> Attorney for Conair Corporation

- 10 -                    Case No. 08cv1256 BTM (CAB)

1   J. Christopher Jaczko (149317)
    Allison H. Goddard (211098)
2   JACZKO GODDARD LLP
    4401 Eastgate Mall
3   San Diego, California 92121
    Phone: (858) 550-6150
    Fax: (858) 225-3500
4
5   Dean D. Niro *(Pro Hac Vice)*
    Robert A. Conley *(Pro Hac Vice)*
    NIRO, SCAVONE, HALLER & NIRO
6   181 West Madison, Suite 4600
    Chicago, Illinois  60602
    Phone: (312) 236-0733
7   Fax: (312) 236-3137
8   Attorneys for CONAIR CORPORATION
9
            **IN THE UNITED STATES DISTRICT COURT**
10
        **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
11
    JENS ERIK SORENSEN, as Trustee of         Case No. 08cv1256 BTM (CAB)
    SORENSEN RESEARCH AND
12  DEVELOPMENT TRUST,
                                              **DECLARATION OF ROBERT A.**
13              Plaintiff,                    **CONLEY IN SUPPORT OF CONAIR**
                                              **CORPORATION'S MOTION TO**
        v.                                    **STAY THE LITIGATION PENDING**
14                                            **THE OUTCOME OF**
    CONAIR CORPORATION, a Delaware            **REEXAMINATION PROCEEDINGS**
15  Corporation; and DOES 1-100,
16              Defendants.                   Date:   September 26, 2008
                                              Time:   11:00 am
17                                            Courtroom 15, Fifth Floor
    CONAIR CORPORATION,                       Hon. Barry Ted Moskowitz
18
                Counter-Plaintiff,
                                              **NO ORAL ARGUMENT UNLESS**
19      v.                                    **REQUESTED BY THE COURT**
20  JENS ERIK SORENSEN, as Trustee of
    SORENSEN RESEARH AND
21  DEVELOPMENT TRUST,
                Counter-Defendant.
22
23
24

                                              Case No. 08cv1256 BTM (CAB)

Robert A. Conley declares and states as follows:

I am an attorney at the law firm of Niro, Scavone, Haller & Niro, which represents Conair Corporation in this case. Unless otherwise stated herein, I have personal knowledge of the facts stated in this declaration and if called upon by a court of law to do so, I could and would testify competently to them.

1. Attached hereto as Exhibit A is a true and correct copy of the Transaction History for Reexamination Control No. 90/008,775 which was downloaded from the PTO's publicly available PAIR website on August 12, 2008.

2. Attached hereto as Exhibit B is a true and correct copy of the Transaction History for Reexamination Control No. 90/008,976 which was downloaded from the PTO's publicly available PAIR website on August 12, 2008.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


Dated: August 13, 2008                    /s/ Robert A. Conley
                                          Robert A. Conley

**PROOF OF SERVICE**

I hereby certify that on August 13, 2008, I caused the foregoing **DECLARATION OF ROBERT A. CONLEY IN SUPPORT OF CONAIR CORPORATION'S MOTION TO STAY THE LITIGATION PENDING THE OUTCOME OF REEXAMINATION PROCEEDINGS** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

> J. Michael Kaler (158296)
> KALER LAW OFFICES
> 9930 Mesa Rim Road, Suite 200
> San Diego, California 92121
> Phone: (858) 362-3151
> Fax: (858) 824-9073
> michael@kalerlaw.com
>
> Melody A. Kramer (169984)
> KRAMER LAW OFFICE
> 9930 Mesa Rim Road, Suite 1600
> San Diego, California 92121
> Phone: (858) 362-3150
> Fax: (858) 824-9073
> mak@kramerlawip.com
>
> *Attorneys for Plaintiff*

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

> /s/ Allison H. Goddard
> Attorney for Conair Corporation

- 2 -                           Case No. 08cv1256 BTM (CAB)

# Exhibit A

| 90/008,775 | STABILIZED INJECTION MOLDING WHEN USING A COMMON MOLD PART WITH SEPARATE COMPLIMENT MOLD PARTS | 08-12-2008::10:46:46 |
|---|---|---|

## Transaction History

| Date | Transaction Description |
|---|---|
| 04-18-2008 | Information Disclosure Statement (IDS) Filed |
| 03-11-2008 | Date Forwarded to Examiner |
| 02-01-2008 | Information Disclosure Statement (IDS) Filed |
| 02-01-2008 | Certificate of Service |
| 02-01-2008 | Information Disclosure Statement Filed |
| 12-21-2007 | Information Disclosure Statement (IDS) Filed |
| 12-21-2007 | Certificate of Service |
| 12-21-2007 | Information Disclosure Statement Filed |
| 01-03-2008 | Email Notification |
| 01-03-2008 | Change in Power of Attorney (May Include Associate POA) |
| 01-02-2008 | Correspondence Address Change |
| 12-21-2007 | Information Disclosure Statement (IDS) Filed |
| 10-11-2007 | Determination -- Reexam Ordered |
| 07-30-2007 | Information Disclosure Statement considered |
| 10-03-2007 | Reexam Litigation Search Conducted |
| 10-16-2007 | Notice of Reexam Published in Official Gazette |
| 09-11-2007 | Case Docketed to Examiner in GAU |
| 07-30-2007 | Information Disclosure Statement (IDS) Filed |
| 08-02-2007 | Notice of assignment of reexamination request |
| 08-02-2007 | Notice of reexamination request filing date |
| 08-01-2007 | Completion of Preprocessing - Released to Assigned GAU |
| 08-02-2007 | Application Is Now Complete |
| 08-01-2007 | Title Report |
| 07-30-2007 | Reexamination requested by third party requester |
| 07-30-2007 | Receipt of Original Ex Parte Reexam Request |

**Close Window**

# Exhibit B

| 90/008,976 | STABILIZIED INJECTION MOLDING WHEN USING A COMMON MOLD PART WITH SEPERATE COMPLIMENTARY MOLD PARTS | 08-12-2008::10:47:34 |

## Transaction History

| Date | Transaction Description |
|------|------------------------|
| 06-18-2008 | Reexam Litigation Search Conducted |
| 04-01-2008 | Notice of Reexam Published in Official Gazette |
| 02-21-2008 | Determination -- Reexam Ordered |
| 02-16-2008 | Reexam Litigation Search Conducted |
| 12-21-2007 | Information Disclosure Statement considered |
| 01-29-2008 | Case Docketed to Examiner in GAU |
| 12-21-2007 | Information Disclosure Statement (IDS) Filed |
| 01-10-2008 | Completion of Preprocessing - Released to Assigned GAU |
| 01-10-2008 | Title Report |
| 01-10-2008 | Notice of reexamination request filing date |
| 01-10-2008 | Notice of assignment of reexamination request |
| 12-21-2007 | Reexamination requested by third party requester |
| 12-21-2007 | Receipt of Original Ex Parte Reexam Request |

**Close Window**

1   J. Christopher Jaczko (149317)
    Allison H. Goddard (211098)
2   JACZKO GODDARD LLP
    4401 Eastgate Mall
3   San Diego, California 92121
    Phone: (858) 550-6150
    Fax: (858) 225-3500
4
    Dean D. Niro *(Pro Hac Vice)*
5   Robert A. Conley *(Pro Hac Vice)*
    NIRO, SCAVONE, HALLER & NIRO
6   181 West Madison, Suite 4600
    Chicago, Illinois  60602
7   Phone: (312) 236-0733
    Fax: (312) 236-3137
8
    Attorneys for CONAIR CORPORATION

9               **IN THE UNITED STATES DISTRICT COURT**

10          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| 11  JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST, <br><br> 12 <br><br> 13                  Plaintiff, <br><br>        v. <br><br> 14  CONAIR CORPORATION, a Delaware Corporation; and DOES 1-100, <br><br> 15 <br><br>                Defendants. | Case No. 08cv1256 BTM (CAB) <br><br> **NOTICE OF LODGING OF AUTHORITIES CITED IN SUPPORT OF CONAIR CORPORATION'S MOTION TO STAY THE LITIGATION PENDING THE OUTCOME OF REEXAMINATION PROCEEDINGS** <br><br> Date:   September 26, 2008 <br> Time:   11:00 am <br> Courtroom 15, Fifth Floor <br> Hon. Barry Ted Moskowitz |
| 16 <br> 17  CONAIR CORPORATION, <br><br>                Counter-Plaintiff, <br><br> 18 <br>        v. <br><br> 19  JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARH AND DEVELOPMENT TRUST, <br><br> 20 <br> 21                Counter-Defendant. | NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

22

23

24

Submitted herewith are true and correct copies of the following authorities cited in support of Conair Corporation's Motion to Stay the Litigation Pending the Outcome of Reexamination Proceedings:

| Exhibit | Authority | Page |
|---|---|---|
| 1 | *Manual of Patent Examining Procedure* (Rev. 6, Sept. 2007) §§ 2250(III) and 2261 ...........................................................1 | |
| 2 | *Sorensen v. Black & Decker Corp.,* 2007 U.S. Dist. LEXIS 66712 (S.D. Cal. Sept. 10, 2007) ...................................6 | |
| 3 | *SKF Condition Monitoring, Inc. v. SAT Corp.,* 2008 U.S. Dist. LEXIS 24310 (S.D. Cal. Feb. 26, 2008) ....................................12 | |
| 4 | *Photoflex Prods., Inc. v. Circa 3 LLC,* 2006 U.S. Dist. LEXIS 37743 (N.D. Cal. May 24, 2006) ...................................18 | |
| 5 | *Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.,* 2007 U.S. Dist. LEXIS 18785 (N.D. Cal. Feb. 26, 2007) ...................................21 | |
| 6 | *Tse v. Apple, Inc.,* 2007 U.S. Dist. LEXIS 76521 (N.D. Cal. Oct. 4, 2007).......................................24 | |
| 7 | *Sorensen v. Digital Networks North America, Inc.,* 2008 U.S. Dist. LEXIS 6454 (N.D. Cal. Jan. 16, 2008) ....................................28 | |
| 8 | *KLA-Tencor Corp. v. Nanometrics, Inc.,* 2006 U.S. Dist. LEXIS 15754 (N.D. Cal. Mar. 16, 2006)...................................31 | |
| 9 | *Sorensen v. Rally Mfg., Inc.,* Case No. 08cv305, Doc. #15 (S.D. Cal. Apr. 25, 2008)....................................35 | |

Dated:     August 13, 2008          JACZKO GODDARD LLP

                                     NIRO SCAVONE HALLER & NIRO


                          By:     /s/ Allison H. Goddard
                                  Allison H. Goddard
                                  Attorneys for Defendant and Counter-Plaintiff
                                  CONAIR CORPORATION

# PROOF OF SERVICE

I hereby certify that on August 13, 2008, I caused the foregoing **NOTICE OF LODGING OF AUTHORITIES CITED IN SUPPORT OF CONAIR CORPORATION'S MOTION TO STAY THE LITIGATION PENDING THE OUTCOME OF REEXAMINATION PROCEEDINGS** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

> J. Michael Kaler (158296)
> KALER LAW OFFICES
> 9930 Mesa Rim Road, Suite 200
> San Diego, California 92121
> Phone: (858) 362-3151
> Fax: (858) 824-9073
> michael@kalerlaw.com
>
> Melody A. Kramer (169984)
> KRAMER LAW OFFICE
> 9930 Mesa Rim Road, Suite 1600
> San Diego, California 92121
> Phone: (858) 362-3150
> Fax: (858) 824-9073
> mak@kramerlawip.com
>
> *Attorneys for Plaintiff*

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

/s/ Allison H. Goddard
Attorney for Conair Corporation

- 2 -                          Case No. 08cv1256 BTM (CAB)

# Exhibit 1

# Manual of
# PATENT
# EXAMINING
# PROCEDURE

Original Eighth Edition, August 2001
Latest Revision September 2007



## U.S. DEPARTMENT OF COMMERCE
## United States Patent and Trademark Office

Rev. 6, Sept. 2007

EXHIBIT 1 - Page 1

The U.S. Patent and Trademark Office does not handle the sale of the Manual, distribution of notices and revisions, or change of address of those on the subscription list. Correspondence relating to existing subscriptions should be sent to the Superintendent of Documents at the following address:

Superintendent of Documents          Telephone:   202-512-2267
Mail List Section
Washington, DC 20402

Inquiries relating to purchasing the Manual should be directed to:

Superintendent of Documents          Telephone:   202-512-1800
United States Government Printing Office
Washington, DC 20402

Orders for reproduced copies of individual replacement pages or of previous revisions of the Manual should be sent to the following address:

Mail Stop Document Services          Telephone:   1-800-972-6382 or 571-272-3150
Director of the U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

Previous editions and revisions of the Manual are available on microfilm in the Patent Search Room. The Manual is available on CD-ROM and on diskette from:

U.S. Patent and Trademark Office          Telephone:   571-272-5600
Office of Electronic Information Products
MDW 4C18,  P.O. Box 1450
Alexandria, VA 22313-1450

Employees of the U.S. Patent and Trademark Office should direct their requests for the Manual, replacement pages, notices, and revisions to the Office of Patent Training.          Telephone:   571-272-7222

Pursuant to the Patent and Trademark Office Efficiency Act (PTOEA) (Pub. L. 106-113, 113 Stat. 1501A-572), the head of the United States Patent and Trademark Office (USPTO) is the "Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office." The Director is assisted by the "Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the United States Patent and Trademark Office." The patent operations of the USPTO are now headed by the "Commissioner for Patents." The trademark operations of the USPTO are now headed by the "Commissioner for Trademarks." Under section 4741(b) of the PTOEA, any reference to the Commissioner of Patents and Trademarks, the Assistant Commissioner for Patents, or the Assistant Commissioner for Trademarks is deemed to refer to the Director, the Commissioner for Patents, or the Commissioner for Trademarks, respectively. See "Reestablishment of the Patent and Trademark Office as the United States Patent and Trademark Office" published in the *Federal Register* at 65 FR 17858 (Apr. 5, 2000), and in the *Official Gazette of the United States Patent and Trademark Office* at 1234 O.G. 41 (May 9, 2000).

Additions to the text of the Manual are indicated by arrows (><) inserted in the text.  Deletions are indicated by a single asterisk (*) where a single word was deleted and by two asterisks (**) where more than one word was deleted. The use of three or five asterisks in the body of the laws, rules, treaties, and administrative instructions indicates a portion of the law, rule, treaty, or administrative instruction which was not reproduced.

First Edition, November 1949
Second Edition, November 1953
Third Edition, November 1961
Fourth Edition, June 1979
Fifth Edition, August 1983
Sixth Edition, January 1995
Seventh Edition, July 1998
Eighth Edition, August 2001
    Revision 1, February 2003
    Revision 2, May 2004
    Revision 3, August 2005
    Revision 4, October 2005
    Revision 5, August 2006
    Revision 6, September 2007

Rev. 6, Sept. 2007

EXHIBIT 1 - Page 2

manner of making amendments in reexamination proceedings.

### E. Form Paragraphs - Inter Partes Reexamination

See MPEP § 2666.01 for the form paragraphs to use in *inter partes* reexamination proceedings, in advising the patent owner as to the manner of making amendments.

## II. ALL CHANGES ARE MADE *VIS-A-VIS* THE PATENT BEING REEXAMINED

When a reexamination certificate is printed, all underlined matter is printed in italics and all brackets are printed as they were inserted in the proceeding in order to thereby show exactly which additions and deletions have been made in the patent via the reexamination proceeding. In accordance with 37 CFR 1.530(i), all amendments to the patent being reexamined must be made relative to the patent specification in effect as of the date of the filing of the request for reexamination. The patent specification includes the claims and drawings. If there was a prior change to the patent (made via a prior reexamination certificate, reissue of the patent, certificate of correction, etc.), the first amendment must be made relative to the patent specification as changed by the prior proceeding or other mechanism for changing the patent. All amendments subsequent to the first amendment must also be made relative to the patent specification in effect as of the date of the filing of the request for reexamination, and <u>not</u> relative to the prior amendment.

## III. AMENDMENT AFTER THE PATENT HAS EXPIRED

Pursuant to 37 CFR 1.530(j), "[n]o amendment may be proposed for entry in an expired patent." Thus, if a patent expires during the pendency of a reexamination proceeding for a patent, all amendments to the patent claims and all claims added during the proceeding are withdrawn. This is carried out by placing a diagonal line across all amended and new claims (and text added to the specification) residing in the amendment papers. The patent owner should be notified of this in the next Office action. The Office action will hold the amendments to be improper, and

state that all subsequent reexamination will be on the basis of the unamended patent claims. This procedure is necessary since no amendments will be incorporated into the patent by a certificate after the expiration of the patent.

37 CFR 1.530(j) further states that "[m]oreover, no amendment, other than the cancellation of claims, will be incorporated into the patent by a certificate issued after the expiration of the patent."

Thus, at the time the NIRC is to be issued, the examiner should ensure that all rejected and objected to claims are canceled. The examiner should issue an examiner's amendment canceling any such claims not already canceled.

The cancellation of the original patent claims is the only "amendatory" change permitted in an expired patent.

## IV. EXAMPLES

A substantial number of problems arise in the Office because of improper submission of proposed amendments in reexamination proceedings. The following examples are provided to assist in the preparation of proper proposed amendments in reexamination proceedings.

(A) Original Patent Description Or Patent Claim Amended

(1) Specification - submit a copy of the entire paragraph (of the specification of the patent) being amended with underlining and bracketing. Thus, the amendment would be presented as follows:

Replace the paragraph beginning at column 4, line 23 with the following:

Scanning [is] <u>are</u> controlled by clocks which are, in turn, controlled from the display tube line synchronization. The signals resulting from scanning the scope of the character are delivered in parallel, then converted into serial mode through a shift register, wherein the shift signal frequency is controlled by a clock that is controlled from the display tube line synchronization.

(2) Claims - for changes to the patent claims, one must submit a copy of the entire patent claim with the amendments shown by underlining and bracketing. Thus, the amendment would be presented as follows:

EXHIBIT 1 - Page 3

cited, the author (if any), title, date, pages or plates, and place of publication, or place where a copy can be found, will be given.

    (2) When a rejection in an application is based on facts within the personal knowledge of an employee of the Office, the data shall be as specific as possible, and the reference must be supported, when called for by the applicant, by the affidavit of such employee, and such affidavit shall be subject to contradiction or explanation by the affidavits of the applicant and other persons.

    (e) *Reasons for allowance.* If the examiner believes that the record of the prosecution as a whole does not make clear his or her reasons for allowing a claim or claims, the examiner may set forth such reasoning. The reasons shall be incorporated into an Office action rejecting other claims of the application or patent under reexamination or be the subject of a separate communication to the applicant or patent owner. The applicant or patent owner may file a statement commenting on the reasons for allowance within such time as may be specified by the examiner. Failure by the examiner to respond to any statement commenting on reasons for allowance does not give rise to any implication.

    It is intended that the examiner's first *ex parte* action on the merits be the primary action to establish the issues which exist between the examiner and the patent owner insofar as the patent is concerned. At the time the first action is issued, the patent owner has already been permitted to file a statement and an amendment pursuant to 37 CFR 1.530; and the reexamination requester, if the requester is not the patent owner, has been permitted to reply thereto pursuant to 37 CFR 1.535. Thus, at this point, the issues should be sufficiently focused to enable the examiner to make a definitive first *ex parte* action on the merits which should clearly establish the issues which exist between the examiner and the patent owner insofar as the patent is concerned. In view of the fact that the examiner's first action will clearly establish the issues, the first action should include a statement cautioning the patent owner that a complete response should be made to the action since the next action is expected to be a final action. The first action should further caution the patent owner that the requirements of 37 CFR 1.116(b) will be strictly enforced after final action and that any amendment after a final action must include "a showing of good and sufficient reasons why the amendment is necessary and was not earlier presented" in order to be considered. The language of form paragraph 22.04 is appropriate for inclusion in the first Office action:

¶ *22.04 Papers To Be Submitted in Response to Action - Ex Parte Reexamination*

    In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patent-ability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116 after final rejection and 37 CFR 41.33 after appeal, which will be strictly enforced.

## 2260.01    Dependent Claims [R-2]

    If ** >an unamended base patent claim (i.e., a claim appearing in the reexamination as it appears in the patent)< has been rejected or canceled, any claim which is directly or indirectly dependent thereon should be confirmed or allowed if the dependent claim is otherwise allowable. The dependent claim should *not* be objected to or rejected merely because it depends on a rejected or canceled patent claim. No requirement should be made for rewriting the dependent claim in independent form. As the original patent claim numbers are not changed in a reexamination proceeding, the content of the canceled base claim would remain in the printed patent and would be available to be read as a part of the confirmed or allowed dependent claim.

    If a new base claim (a base claim other than a base claim appearing in the patent) has been canceled in a reexamination proceeding, a claim which depends thereon should be rejected as *>indefinite<. If a new base claim >or an amended patent claim< is rejected, a claim dependent thereon should be objected to if it is otherwise patentable and a requirement made for rewriting the dependent claim in independent form.

## 2261    Special Status for Action

*35 U.S.C. 305.  Conduct of reexamination proceedings.*

        *****

    All reexamination proceedings under this section, including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special dispatch within the Office.

    In view of the requirement for "special dispatch," reexamination proceedings will be "special" throughout their pendency in the Office. The examiner's first action on the merits should be completed within *1 month* of the filing date of the requester's reply (37 CFR 1.535), or within *1 month* of the filing date of the patent owner's statement (37 CFR 1.530) if there is no requester other than the patent owner. If no submissions are made under either 37 CFR 1.530 or 37 CFR 1.535, the first action on the merits should be completed within *1 month* of any due date for such

EXHIBIT 1 - Page 4

submission. Mailing of the first action should occur within 6 WEEKS after the appropriate filing or due date of any statement and any reply thereto.

Any cases involved in litigation, whether they are reexamination proceedings or reissue applications, will have priority over all other cases. Reexamination proceedings not involved in litigation will have priority over all other cases except reexaminations or reissues involved in litigation.

## 2262 Form and Content of Office Action [R-5]

The examiner's first Office action will be a statement of the examiner's position and should be so complete that the second Office action can properly be made a final action. See MPEP § 2271.

All Office actions are to be ** typed. The first Office action must be sufficiently detailed that the pertinency and manner of applying the cited prior art to the claims is clearly set forth therein. >Where the request for reexamination includes material such as a claim chart to explain a proposed rejection in order to establish the existence of a substantial new question of patentability, the examiner may cut and paste the claim chart (or other material) to incorporate it within the body of the Office action. The examiner must, however, carefully review the claim chart (or other material) to ensure that any items incorporated in a statement of the rejection clearly and completely address the patentability of the claims. For actions subsequent to the first Office action, the examiner must be careful to additionally address all patent owner responses to previous actions.< If the examiner concludes in any Office action that one or more of the claims are patentable over the cited patents or printed publications, the examiner should indicate why the claim(s) is clearly patentable in a manner similar to that used to indicate reasons for allowance (MPEP § 1302.14). If the record is clear why the claim(s) is/are clearly patentable, the examiner may refer to the particular portions of the record which clearly establish the patentability of the claim(s). The first action should also respond to the substance of each argument raised by the patent owner and requester pursuant to

37 CFR 1.510, 1.530, and 1.535. If arguments are presented which are inappropriate in reexamination, they should be treated in accordance with 37 CFR 1.552(c). It is especially important that the examiner's action in reexamination be thorough and complete in view of the finality of a reexamination proceeding and the patent owner's inability to file a continuation proceeding.

Normally, the title will not need to be changed during reexamination. If a change of the title is necessary, patent owner should be notified of the need to provide an amendment changing the title as early as possible in the prosecution as a part of an Office Action. If all of the claims are found to be patentable and a Notice of Intent to Issue *Ex Parte* Reexamination Certificate has been or is to be mailed, a change to the title of the invention by the examiner may only be done by a formal Examiner's Amendment. Changing the title and merely initialing the change is NOT permitted in reexamination.

>

## I. PANEL REVIEW CONFERENCE

After an examiner has determined that the reexamination proceeding is ready for an Office action, the examiner will formulate a draft preliminary Office action. The examiner will then inform his/her Special Program Examiner (SPRE) of his/her intent to issue the Office action. The SPRE will convene a panel review conference, and the conference members will review the patentability of the claim(s) pursuant to MPEP § 2271.01. If the conference confirms the examiner's preliminary decision to reject and/or allow the claims, the proposed Office action shall be issued and signed by the examiner, with the two other conferees initialing the action (as "conferee") to indicate their presence in the conference. If the conference does not confirm the examiner's treatment of the claims, the examiner will reevaluate and issue an appropriate Office action.

## II. SAMPLE OFFICE ACTION<

A sample of a first Office action in a reexamination proceeding is set forth below.

EXHIBIT 1 - Page 5

# Exhibit 2

LEXSEE 2007 U.S. DIST. LEXIS 66712

**JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVEL-
OPMENT TRUST, Plaintiff, vs. THE BLACK AND DECKER CORPORATION, et
al., Defendants.**

**CASE NO. 06cv1572 BTM (CAB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
CALIFORNIA**

*2007 U.S. Dist. LEXIS 66712*

**September 10, 2007, Decided
September 10, 2007, Filed**

**PRIOR HISTORY:** *Sorensen v. Black & Decker Corp.,
2007 U.S. Dist. LEXIS 62982 (S.D. Cal., Aug. 27, 2007)*

**COUNSEL:** [*1] For Jens Erik Sorensen, as Trustee of
Sorensen Research and Development Trust, Plaintiff:
James Michael Kaler, LEAD ATTORNEY, Law Offices
of James M Kaler, San Diego, CA; Melody A Kramer,
LEAD ATTORNEY, Kramer Law Office, San Diego,
CA; Patricia A Shackelford, LEAD ATTORNEY, Zel-
kind and Shackelford, San Diego, CA.

For The Black & Decker Corporation, a Maryland cor-
poration, Defendant: Dina M Hayes, Gregory P Casimer,
Raymond P Niro, Jr, LEAD ATTORNEYS, Niro Sca-
vone Haller and Niro, Chicago, IL; John Christopher
Jaczko, LEAD ATTORNEY, Allison H Goddard, Jaczko
Goddard, San Diego, CA; Kenneth S Klein, Foley and
Lardner LLP, San Diego, CA.

For B&D HOLDINGS, LLC, Defendant: Raymond P
Niro, Jr, LEAD ATTORNEY, Niro Scavone Haller &
Niro, Chicago, IL; Kenneth S Klein, Foley and Lardner
LLP, San Diego, CA.

For BLACK & DECKER, INC., Defendant: Raymond P
Niro, Jr, LEAD ATTORNEY, Niro Scavone Haller &
Niro, Chicago, IL; Allison H Goddard, Jaczko Goddard,
San Diego, CA; Kenneth S Klein, Foley and Lardner
LLP, San Diego, CA.

For HI-TECH PLASTICS INC., Phillips Plastics Corpo-
ration, Defendants: Kenneth S Klein, LEAD ATTOR-
NEY, Foley and Lardner LLP, San Diego, CA; Robert L
Binder, LEAD ATTORNEY, Foley [*2] & Lardner
LLP, Milwaukee, WI.

For PORTER-CABLE CORPORATION, VECTOR
PRODUCTS, INC., Defendants: Raymond P Niro, Jr,
LEAD ATTORNEY, Niro Scavone Haller and Niro,
Chicago, IL.

For Black & Decker (U.S.) Inc, Defendant: Raymond P
Niro, Jr, LEAD ATTORNEY, Niro Scavone Haller and
Niro, Chicago, IL; Kenneth S Klein, Foley and Lardner
LLP, San Diego, CA.

For HI-TECH PLASTICS INC., Counter Defendant:
Kenneth S Klein, LEAD ATTORNEY, Foley and Lard-
ner LLP, San Diego, CA; Robert L Binder, LEAD AT-
TORNEY, Foley & Lardner LLP, Milwaukee, WI.

For Jens Erik Sorensen, as Trustee of Sorensen Research
and Development Trust, Counter Defendant: James Mi-
chael Kaler, LEAD ATTORNEY, Law Offices of James
M Kaler, San Diego, CA.

For Phillips Plastics Corporation, Counter Claimant:
Kenneth S Klein, LEAD ATTORNEY, Foley and Lard-
ner LLP, San Diego, CA; Robert L Binder, LEAD AT-
TORNEY, Foley & Lardner LLP, Milwaukee, WI.

**JUDGES:** Honorable Barry Ted Moskowitz, United
States District Judge.

**OPINION BY:** Barry Ted Moskowitz

**OPINION**

**ORDER:**

(1) **DENYING PLAINTIFF'S MOTION FOR
RECONSIDERATION OF DENIAL OF OBJEC-**

EXHIBIT 2 - Page 6

TIONS TO MAGISTRATE JUDGE'S ORDER OF APRIL 9, 2007 AS MOOT [Doc. # 163];

(2) GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S JUNE 20, 2007 [*3] ORDER RE BIFURCATION [Doc. # 171];

(3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STAY [Doc. # 178];

and

(4) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS PREMATURE [Doc. # 204]

### I. Motion for Reconsideration of Denial of Objections to Magistrate Judge's Order

On April 9, 2007, Magistrate Judge Bencivengo issued an order in which she granted in part and denied in part Plaintiff's motion to compel further responses to discovery. In accordance with *28 U.S.C. § 636(b)(1)(A)* and *Fed. R. Civ. P. 72(a)*, Plaintiff filed an objection to that ruling, arguing that it was both clearly erroneous and contrary to law. In an order entered June 14, 2007, the Court overruled Plaintiff's objection without prejudice. The Court found that the Magistrate Judge's determinations regarding the Black & Decker Defendants' waiver of the attorney-client privilege, and the applicability of Patent Local Rule 2.5(d), were neither clearly erroneous nor contrary to law, on the record before the Court. However, the Court was unable to determine at that time whether, and to what extent, the Black & Decker Defendants ("B&D") intended to rely upon the death of Dennis Dearing to provide the requisite [*4] showing of prejudice in support of any laches and/or equitable estoppel defenses. Therefore, Plaintiff was granted leave to serve an interrogatory upon B&D, which stated: "Set forth, in detail, all prejudice to Defendants that resulted from the death of Dennis Dearing in regard to this case." To the extent Plaintiff believed that B&D's response to the interrogatory indicated that this Court's determination regarding waiver of the attorney-client privilege was in error, it was invited to move for reconsideration of the decision at that time.

On July 11, 2007, B&D responded to Plaintiff's interrogatory setting forth the prejudice that resulted from the death of its former in-house counsel Dennis Dearing. The prejudice identified included the inability to have Mr. Dearing testify regarding his communications in the mid-1990s pertaining to Mr. Jens Ole Sorensen's claims of infringement of the '184 Patent. These communications included discussions directly with Mr. Sorensen and his representatives, as well as with John Schiech, Black & Decker's business manager responsible for making all decisions concerning the matter. B&D also indicated that it was prejudiced because it could not present [*5] Mr. Dearing as a witness to defend against Plaintiff's charge of willful infringement.

On July 12, 2007, Plaintiff filed the present motion to reconsider this Court's previous ruling on the basis of the new evidence presented in B&D's interrogatory response. The motion was calendared for hearing, without oral argument, on August 10, 2007. However, while the motion was pending, Magistrate Judge Bencivengo reconsidered her earlier ruling in light of B&D's interrogatory response. On August 3, 2007, Judge Bencivengo issued her "Order Following Discovery Conference on July 26, 2007" in which she ruled:

> Since the defendant is affirmatively relying upon the death of Mr. Dearing to support its defense of laches, the plaintiff is entitled to review Mr. Dearing's files that still exist and reflect his personal thoughts and impressions, so plaintiff may respond to defendant's claim of lost evidence. Defendant was therefore ordered to produce any withheld documents reflecting Mr. Dearing's work product on this matter.

[Doc. # 177 at P 8.] Judge Bencivengo stayed production of Mr. Dearing's work product for 30 days in order to give B&D an opportunity to appeal the order. B&D has just taken that opportunity [*6] and filed a motion for reconsideration on September 4, 2007 [Doc. # 240]. B&D's motion is calendared for hearing by this Court on November 2, 2007.

In light of Judge Bencivengo's more recent order requiring production of Mr. Dearing's privileged documents, and the now-pending motion for reconsideration of that order, the Court finds moot Plaintiff's motion for reconsideration of its previous order overruling Plaintiff's objection to Judge Bencivengo's April 9, 2007 order. The Court finds that this entire issue will be addressed, upon a complete and updated record that includes Judge Bencivengo's August 3, 2007 order, in the Court's forthcoming decision on B&D's pending motion for reconsideration. Accordingly, Plaintiff's motion is **DENIED** without prejudice as moot.

### II. Motion for Reconsideration of Bifurcation

On June 13, 2007, the Court held a hearing on B&D's motion for summary judgment of laches. The Court denied B&D's motion at that hearing and discussion then ensued over the possibility of setting an expedited bench trial on B&D's equitable defenses of laches

EXHIBIT 2 - Page 7

2007 U.S. Dist. LEXIS 66712, *

and estoppel. At B&D's urging, the Court and the parties agreed to schedule this bench trial beginning on December 17, 2007. [*7] In a June 20, 2007 written order confirming the Court's decision from the June 13 hearing, the Court explained that the trial of equitable defenses could be bifurcated from the rest of the trial proceedings relating to infringement. [Doc. # 147 at 2-3.] Citing the Ninth Circuit case of *Danjaq LLC v. Sony Corp., 263 F.3d 942 (9th Cir. 2001)*, the Court explained that, in deciding these equitable defenses, it would need to determine whether there has been any showing of willful infringement on the part of Defendants that would act as a "counterdefense" to laches. The Court invited any party to make a motion for reconsideration of the decision to bifurcate the equitable portion of the trial if they felt that the Court's determination of the willfulness issue presented a problem for any subsequent jury trial proceedings.

On July 20, 2007, B&D accepted the Court's invitation and filed a motion for reconsideration of bifurcation. [Doc. # 171.] B&D explained that it had not appreciated that the Court itself would need to make a finding on willfulness, without the aid of a jury, in any bifurcated trial on equitable defenses. In light of this realization, and its desire to retain its full rights [*8] to a jury determination on willfulness, B&D withdrew its request for an expedited bench trial on its equitable defenses.

Plaintiff has opposed B&D's motion for reconsideration arguing that there is no authority establishing any right to a jury trial on willfulness and, to the extent such a right exists, B&D has waived its rights by continually requesting that the Court schedule a short bench trial on laches before proceeding with the rest of the action.

The Court finds that the right to a jury trial on willfulness exists in a patent action that will be tried to a jury. See, e.g., *Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1250 (Fed. Cir. 1989)*. Having considered the submissions of the parties and the record of these proceedings, the Court does not find that B&D has knowingly waived its right to a jury trial on willfulness. Moreover, the early bifurcated trial on equitable defenses was scheduled by this Court in an effort to accommodate B&D's request for an early determination of laches, which it argued, if found, would greatly expedite the conclusion of this matter. Having recognized that a laches determination requires that this Court determine, before any jury has considered the [*9] question, whether Defendants willfully infringed Plaintiff's patent, B&D has withdrawn its request. The Court sees no reason to push ahead with a bifurcated trial despite B&D's express wishes.

The Court's recognition of the practical ramifications of the intertwinement of willfulness in any laches deter-

mination was the impetus for the Court's invitation to reconsider in its June 20, 2007 order. Having considered B&D's submission, which was based upon the exact issues identified in this Court's own order, the Court hereby GRANTS B&D's motion. The bifurcated bench trial on equitable defenses previously scheduled for December 17, 2007 is hereby VACATED, along with all pretrial proceedings associated with it, including the November 26, 2007 pretrial conference.

### III. Motion to Stay Litigation Pending Reexamination

On August 3, 2007, all Defendants jointly filed a motion for a stay of these proceedings. Defendants' motion is based on B&D's pending request for reexamination of Plaintiff's '184 Patent, which was filed with the U.S. Patent and Trademark Office ("PTO") on July 30, 2007. The request for reexamination challenges, *inter alia*, all 5 claims of the '184 Patent that are asserted in the [*10] present litigation. The challenge is based on a number of prior art references, almost all of which were apparently not considered by the PTO in the prosecution of the '184 Patent.

Courts have inherent power to stay an action pending conclusion of PTO reexamination proceedings. *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)*. The decision whether to grant or deny a motion to stay proceedings pending PTO reexamination rests within the sound discretion of the court. *See, e.g., Photoflex Prods. v. Circa 3 LLC, No. C 04-03715 JSW, 2006 U.S. Dist. LEXIS 37743, at *2-3 (N.D. Cal. May 24, 2006)*. There is a "liberal policy" in favor of granting motions to stay pending the outcome of PTO reexamination proceedings. *ASCII Corp. v. STD Entertainment USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)*.

In determining whether to stay litigation pending reexamination by the PTO, courts generally consider the following factors: (1) the stage of litigation, i.e., whether discovery is almost complete and whether a trial date has been set; (2) whether a stay would cause undue prejudice or present a clear disadvantage to the non-moving party; and (3) whether a stay will simplify the [*11] issues in question and trial of the case. See, e.g., *Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)*.

The Court finds that this litigation has not proceeded so far that it would be unjust to stay the action. Although this action was originally filed about a year ago, and the Court recognizes that substantial amounts of discovery have already occurred, the more relevant inquiry is whether discovery is nearing completion -- it is not. [1] For instance, Magistrate Judge Bencivengo recently granted the parties permission to take an additional 10 depositions per side. [See Doc. # 159 at 2.] No deadline for the completion of fact discovery has even been set. Moreo-

EXHIBIT 2 - Page 8

ver, the parties are just beginning to brief the preliminary issue of claim construction and, in accordance with the decision above to vacate the bifurcated bench trial on equitable defenses, no trial date is currently set for any aspect of this case. In addition, while the Court has already considered two motions for summary judgment, it previously put off consideration of two others until after claim construction, and Plaintiff has just filed a substantial summary judgment motion aimed at piercing Black & Decker's [*12] corporate veil. The Court anticipates that further summary judgment motions regarding infringement and patent validity will be filed once claim construction is complete. Thus, a substantial amount of resources will be employed by all parties and the Court even in advance of any eventual trial. See, e.g., *Broad. Innovation, L.L.C. v. Charter Communs., Inc., No. 03-cv-2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623, at *26-31 (D. Colo. July 11, 2006)* (granting stay, in part, because of significant work remaining on motions for summary judgement, even though trial date was less than three months away).

> 1   In reaching this determination, the Court has considered the surreply submitted by Plaintiff and, therefore, the pending ex parte request to file a surreply [Doc. # 201] is **GRANTED.**

Plaintiff claims Defendants delayed filing their request for reexamination to gain a tactical advantage over it. He claims that Defendants were aware of the prior art that they reference in their reexamination request over seven months ago, but purposely delayed so that the '184 Patent would expire during the reexamination process, thereby precluding Plaintiff from offering any amendments to the claims. Defendants [*13] respond that there was no intentional delay and that their decision to request reexamination was based, in part, on the Supreme Court decision in *KSR International Co. v. Teleflex Inc., 127 S. Ct. 1727, 167 L. Ed. 2d 705 (2007)*, which was only issued at the end of April. The Court is not convinced that Defendants employed any improper tactics in filing their request for reexamination. While Plaintiff is rightfully concerned that a reexamination in the twilight of his patent puts him at a distinct disadvantage, he could have prevented this situation by filing suit many years ago, thereby allowing sufficient time for any reexamination to occur before the patent expired.

Therefore, Plaintiff's cognizable claims of prejudice if a stay should be entered basically boil down to his inconvenience in delaying final collection of any monetary award of royalties, assuming he ultimately wins. However, as the court recognized in Broadcast, the prejudice factor "is best summarized by one question: *do the Plaintiffs have an adequate remedy at law?*" *2006 U.S. Dist. LEXIS 46623, at *32.* Just as in Broadcast, the an-

swer here is that clearly Plaintiff does have an adequate remedy. Defendants point out, and Plaintiff has [*14] not disputed, that the '184 Patent will expire in February 2008 independent of reexamination. Given that a trial on the merits could not occur prior to that date, Plaintiff would not have been granted any injunctive relief by this Court. Therefore, his claim would be restricted to past monetary damages, which, with the addition of prejudgment interest, are fully capable of compensating Plaintiff. Unfortunately, reexamination can be a drawn out process, resulting in a significant delay in court proceedings. Protracted delay is always a risk inherent in granting a stay, yet courts continue to stay actions pending reexamination. The general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay. An average delay for reexamination of approximately 18-23 months is especially inconsequential where Plaintiff himself waited as many as twelve years before bringing the present litigation. (See PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. # 180-3.)

In addition, the Federal Circuit has recently confirmed that the PTO would not be bound in its reexamination by the determinations of this Court. In re Trans Texas Holdings Corp., 2006-1599 and [*15] 2006-1600, *498 F.3d 1290, 2007 U.S. App. LEXIS 19909, at *14-19 (Fed. Cir. Aug. 22, 2007).* Because of this, the Court finds that not only is Plaintiff unlikely to be prejudiced in these proceedings by a stay pending the PTO reexamination, but Defendants would potentially be prejudiced by *failing* to enter a stay. One court has explained this possibility accordingly:

> Not only could the Court and the PTO reach conflicting determinations, but one possible scenario could result in irreparable harm to [Defendant]: if this Court finds that the [patent] is not invalid and that [Defendant] has infringed it, and orders [Defendant] to pay damages to [Plaintiff] for such infringement, then [Defendant] would have no ability to recover those damages if at a later date the PTO determined that the [] patent is invalid.

*Bausch & Lomb, Inc. v. Alcon Lab., Inc., 914 F. Supp. 951, 952 (W.D.N.Y. 1996).* The Court finds such a possibility to be, at a minimum, a highly undesirable outcome.

Finally, the Court finds that the stay will result in the simplification of issues in this case. As explained by the Federal Circuit, "[o]ne purpose of the reexamination procedure is to eliminate trial of [the issue of patent

EXHIBIT 2 - Page 9

claim validity] [*16] (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983),* cert. denied, *464 U.S. 935, 104 S. Ct. 343, 78 L. Ed. 2d 310 (1983).* The Broadcast court, elaborating on this point, explained:

Shifting the patent validity issue to the PTO has many advantages, including:

> 1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

> 2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

> 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

> 4. The outcome of the reexamination may encourage a settlement without the further use of the Court.

> 5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

> 6. Issues, defenses, and evidence will be more easily limited in final pretrial conferences after a reexamination.

> 7. The cost will likely be reduced both for the parties and the Court.

*2006 U.S. Dist. LEXIS 46623, at *9-10 (quoting Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987)).*

The [*17] Court believes that it will benefit from the PTO's evaluation of how the previously unconsidered prior art references impact the claims of the patent-in-suit. The PTO's expert evaluation is likely to be of assistance not only as to the issues of validity, but its understanding of the claims is also likely to aid this Court in the preliminary process of claim construction.

The Court finds that, especially in this case, the reexamination process has the potential to significantly narrow the issues for trial because of the impending expiration of the `184 Patent. While the parties have argued at length about exactly how this additional variable affects the calculation of the likely outcome of reexamination, the Court need not resolve this dispute to reach the

proper conclusion. It is enough to note that when reexamination is requested by a third party, as in this case, all claims are confirmed only 29% of the time. (See PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. # 180-3.) Since no amendments can be offered to an expired patent, there is obviously a significant likelihood that the validity of the claims at issue in this action will be affected by the reexamination process. [*18] [2]

> 2 Plaintiff has argued that the PTO is unlikely to grant reexamination precisely because the '184 Patent will expire soon. However, Plaintiff failed to produce any evidence to support this contention. Moreover, even if Plaintiff is correct, and the PTO fails to grant reexamination (a decision which should issue no later than October 30, 2007), this Court would immediately lift the stay and these proceedings would continue -- a relatively insignificant 2-month delay being all that would result.

In addition, the Court expects that the reexamination process will not only aid the Court in these proceedings, but should also redound to the benefit of the parties, both Defendants and Plaintiff. As the Broadcast court explained in its discussion of the possibility of prejudice from entering a stay:

> If the PTO does not invalidate or otherwise alter the claims of the [] patent, the Plaintiffs' legal remedy remains unaffected . . . . Moreover, if the claims are narrowed, both sets of parties will have benefitted by avoiding the needless waste of resources before this Court, and again, the Plaintiffs will be able to pursue their claim for money damages at trial. Finally, if the claims are strengthened, [*19] the Plaintiffs' position will be as well, and their likelihood of monetary damages will increase. *See, e.g., Hamilton, 355 F. Supp. 2d 991, 2005 U.S. Dist. LEXIS 2005, 2005 WL 3465664 at *1* ("[I]f the PTO upholds the validity of plaintiff's patent, 'the plaintiff's rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain.") (quoting *Pegasus Dev. Corp. v. Directv, Inc., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073 at *2).*

*2006 U.S. Dist. LEXIS 46623, at *32-33.* Accordingly, the Court finds that a stay is appropriate to avoid the risk of unnecessary litigation and to permit the clarification of issues before this Court.

EXHIBIT 2 - Page 10

2007 U.S. Dist. LEXIS 66712, *

Therefore, Defendants' motion to stay this litigation is **GRANTED IN PART** and **DENIED IN PART**. With the exception of two pending motions, all proceedings are hereby stayed pending the PTO's reexamination of the '184 Patent. The Court will continue to hear Plaintiff's pending motion for entry of default against Defendant Porter-Cable Corporation [Doc. # 182], which is calendared for hearing on October 12, 2007. As was discussed above in Section I, the Court will also continue to hear B&D's pending motion for reconsideration of Magistrate Judge Bencivengo's August 3, 2007 [*20] order regarding production of Dennis Dearing's attorney work product [Doc. # 240], which is calendared for hearing on November 2, 2007. The Clerk is directed to **VACATE** all scheduled discovery hearings, as well as the claim construction hearing previously set for November 19, 2007. All hearing dates will be reset, to the extent appropriate, once the stay of these proceedings has been lifted.

Defendants are ordered to file a notice informing the Court of the PTO's decision on the pending application for reexamination within 10 days of receipt of such decision. If the PTO declines B&D's request to reexamine the '184 Patent, the Court will immediately lift the stay and recalendar all vacated hearing dates. If, however, the PTO approves reexamination, this stay will remain in place pending some resolution of those proceedings. During the pendency of the reexamination, Defendants will be required to file a notice every 6 months apprising

the Court of any change in the status of those proceedings.

#### IV. Motion for Partial Summary Judgment

On August 30, 2007, Plaintiff filed a motion for partial summary judgment piercing the corporate veils of the Black & Decker Defendants, or in the alternative, [*21] holding them to be a single enterprise for purposes of patent infringement liability. [Doc. # 204.] The motion is presently calendared for hearing on October 26, 2007. In light of the Court's entry of a stay of these proceedings pending the PTO patent reexamination, the Court finds Plaintiff's motion to be premature. Accordingly, the Court hereby DENIES Plaintiff's motion without prejudice. [3] As the Court is aware of the substantial volume of Plaintiff's motion, he is invited to refile this motion once the stay has been lifted by simply filing a short notice of motion which incorporates by reference his earlier filing.

> 3    Plaintiff's pending motion to file confidential documents under seal in support of the motion for partial summary judgment [Doc. # 204-5] is also **DENIED** as moot.

**IT IS SO ORDERED.**

DATED: September 10, 2007

Honorable Barry Ted Moskowitz

United States District Judge

EXHIBIT 2 - Page 11

# Exhibit 3

LEXSEE 2008 U.S. DIST. LEXIS 24310

**SKF CONDITION MONITORING, INC., Plaintiff, vs. SAT CORPORATION, Defendant.**

**CASE NO. 07CV1116 BTM (NLS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

*2008 U.S. Dist. LEXIS 24310*

**February 26, 2008, Decided**

**COUNSEL:** [*1] For SKF Condition Monitoring Inc, a California corporation, Plaintiff: Frederick S Berretta, LEAD ATTORNEY, Boris Zelkind, Knobbe Martens Olson and Bear, San Diego, CA.

For SAT Corporation, a Texas corporation, Defendant: Loren G Helmreich, Browning Bushman, Houston, TX; Scott Jeffrey Menghini, Fitch Even Tabin and Flannery, San Diego, CA.

For SAT Corporation, a Texas corporation, Counter Claimant: Loren G Helmreich, Browning Bushman, Houston, TX; Scott Jeffrey Menghini, Fitch Even Tabin and Flannery, San Diego, CA.

For SKF Condition Monitoring Inc, a California corporation, Counter Defendant: Frederick S Berretta, LEAD ATTORNEY, Boris Zelkind, Knobbe Martens Olson and Bear, San Diego, CA.

**JUDGES:** Honorable Barry Ted Moskowitz, United States District Judge.

**OPINION BY:** Barry Ted Moskowitz

**OPINION**

ORDER:

(1) DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION [Doc. # 9];

(2) DENYING DEFENDANT'S ALTERNATIVE MOTION FOR TRANSFER OF VENUE [Doc. # 9]; AND

(3) GRANTING DEFENDANT'S MOTION TO STAY [Doc. # 7].

On June 19, 2007, Plaintiff SKF Condition Monitoring, Inc. (SKF) filed the instant action alleging that Defendant SAT Corporation (SAT) imports, uses and sells products which infringe SKF's *U.S. Patent No. 6,006,164 ("the '164 patent").* [*2] Defendant has moved to (1) dismiss this action for lack of personal jurisdiction; (2) as an alternative to dismissal, transfer venue to the Southern District of Texas; and (3) stay discovery in this action pending the results of a re-examination of the *'164 patent* by the United States Patent Office.

**FACTUAL BACKGROUND**

Defendant SAT is a Texas corporation with offices in Houston, Texas. Defendant is a relatively small corporation with sales of approximately $ 10.5 million in the past year. Plaintiff SKF is a San Diego-based subsidiary of a larger Swedish company. Although Plaintiff's annual sales approximate $ 50 million, the parent group to which Plaintiff belongs is a much larger corporation with annual sales of approximately $ 7.75 billion.

In January 1999, Defendant contracted to purchase the MARLIN product, which monitors vibration in machines, from Plaintiff. Defendant marketed and sold these vibration monitors as part of its "IntelaTrac" condition monitoring system. In early 2002, Plaintiff chose not to renew its contract with Defendant for sale of vibration monitors. Since that time, Defendant has only conducted limited business with Plaintiff. When a MARLIN product that Defendant [*3] sold to its customers needs repair or calibration, Defendant ships that monitor to Plaintiff's repair center in San Diego on behalf of its customers.

Because Plaintiff refused to continue selling its vibration monitors to Defendant, Defendant began importing the VIBTOOL Condition Monitor Probe (VIBTOOL) from a company called Pruftechnik located in Germany. Defendant uses the VIBTOOL device as a peripheral, optional component of its IntelaTrac system.

EXHIBIT 3 - Page 12

Plaintiff alleges that Defendant's importation and sale of the VIBTOOL infringes the '164 patent.

On October 13, 2005, Plaintiff first notified Defendant of the alleged infringement. Over the next twenty months, the parties and counsel for Pruftechnik corresponded in an effort to resolve this dispute. Plaintiff filed its complaint on June 19, 2007. On August 7, 2007, Pruftechnik filed a Request for Reexamination of the '164 patent, asking the U.S. Patent Office to examine the validity of the '164 patent given the existence of two prior patents. The U.S. Patent Office granted this request for reexamination on November 8, 2007. Only discovery relating to personal jurisdiction has taken place in this matter and no trial date has been set.

## DISCUSSION

A. [*4] Defendant's Motion to Dismiss

Defendant moves to dismiss for lack of personal jurisdiction pursuant to *Federal Rule of Civil Procedure 12(b)(2)*. Defendant argues that it lacks sufficient minimum contacts with the forum district [1] and that it would be constitutionally unreasonable to require Defendant to defend this action in this forum.

> 1   In states with more than one federal district, personal jurisdiction and venue for corporate defendants are similar but not identical questions. The test for personal jurisdiction is whether a non-resident corporation has sufficient "minimum contacts" with the forum state. *See Cal. Civ. Proc. Code § 410.10*; *Pacific Atl. Trading Co. v. M/V Main Express, 758 F.2d 1325, 1327 (9th Cir. 1985)*; *3D Systems, Inc. v. Aerotech Labs, Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998)*. The test for proper venue, however, is whether the corporation has sufficient contacts with the *forum district,* such that it would be subject to personal jurisdiction in that district *if that district were a separate state. 28 U.S.C. §§1391(c)*. Although Defendant appears to have confused this distinction in its opening brief, Defendant makes clear throughout its papers that it is moving to [*5] dismiss under *Federal Rule of Civil Procedure 12(b)(2)* for lack of personal jurisdiction rather than attacking venue in this district of California as opposed to another district located in California.

Contrary to Defendant's assertion, the test for whether the Court has jurisdiction will depend on Defendant's contacts with the entire state of California, not just the Southern District of California where this Court is located. California's long-arm statute is co-extensive with the limits of federal due process. *Cal. Civ. Proc.*

*Code § 410.10*. The jurisdictional inquiry under the state statute and the federal *due process clause* is therefore the same. *Pacific Atl. Trading Co. v. M/V Main Express, 758 F.2d 1325, 1327 (9th Cir. 1985)*. Specific personal jurisdiction exists if: 1) the defendant purposefully directed its activities at the residents of California; 2) the plaintiff's claims arise out of those activities; and 3) it is reasonable and fair for the court to exercise jurisdiction over a non-resident defendant. *3D Systems, Inc. v. Aerotech Labs, Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998)*.

For the reasons set forth below, the Court concludes that it has specific jurisdiction over Defendant [*6] regarding the patent infringement claims brought by Plaintiff in this case. Plaintiff alleges that Defendant purposefully directed its activities toward the state of California by selling the accused VIBTOOL product to California residents and also directing marketing activities toward California residents. [2] As the Supreme Court explained,

> [i]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States . . .. The forum State does not exceed its powers under the *Due Process Clause* if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)*.

In the patent infringement context, the Federal Circuit has held that specific jurisdiction exists where a defendant purposefully shipped the accused product into the forum state through an established distribution [*7] channel. *Beverly Hills Fan Co. v. Royal Sovereign Co., 21 F.3d 1558, 1565 (Fed. Cir. 1994)*.

> 2   Plaintiff also argues that specific jurisdiction exists because its claims arise out of Defendant's previous contract to purchase the MARLIN products from them. The Court does not reach this issue because it finds specific jurisdiction over Defendant on other grounds.

Here, after conducting jurisdiction-related discovery, Plaintiff asserts that Defendant has directed the following activities toward the state of California. Defendant SAT

EXHIBIT 3 - Page 13

sold 50 units of the accused VIBTOOL device to California companies between August 2005 and May 2007. (Berretta Decl. Ex. 21) Forty-five of these units were billed to companies located in California although shipped elsewhere and five of these units were shipped to California locations. (Berretta Decl. Ex. 21) In addition to these completed sales, Defendant provided price quotes for three additional units of the accused device to be shipped to California locations. (Berretta Decl. Ex 22) Defendant also performed several demonstrations of the VIBTOOL device at a trade conference and various customer sites located in California from March 2006 to August 2007.(Berretta [*8] Decl. Ex 25) These demonstrations were made presumably to current customers or potential customers in order to market the product. It is clear from the above that Defendant purposefully and knowingly shipped the accused product into California on at least five occasions and expended efforts to continue and expand their sales of accused products in the forum state. The fact that most of the VIBTOOLs sold to California companies were shipped out of state does not change the fact Defendant knowingly made contacts with this state by selling the accused products to corporations located in California. The Court, therefore, disagrees with Defendant's contention that their contacts with California were random and fortuitous. The Court concludes that Defendant's contacts with the state were such that they should have reasonably anticipated being brought into court in this state.

The Court also finds that Plaintiff's claims arise out of Defendant's activities directed toward California. The Plaintiff alleges that Defendant infringed the *'164 patent* by importing the accused products and selling them in the United States. These claims therefore arise out of Defendant's contacts with California [*9] which include selling the accused product to corporations located in California, shipping the accused item for use in California, and marketing the product to California companies. *Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1565 (Fed. Cir. 1994)* (finding the patent infringement cause of action arose from defendant's acts of shipping the accused product into the forum state).

The Court must next determine whether it would be reasonable to assert jurisdiction given all the circumstances. "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).* "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the

presence of some other considerations would render jurisdiction unreasonable." Id.

In determining whether the exercise of jurisdiction over a nonresident defendant comports with "fair play [*10] and substantial justice," the Court must balance the following factors: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interests of the states in furthering their social policies. *Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 429 (Fed. Cir. 1996)* citing *World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).*

Here, Plaintiff is a California corporation with its principal place of business located in California. Most of the harm from Defendant's alleged infringing activities is therefore likely felt in California even if the bulk of Defendant's accused product is shipped for use elsewhere. See *Beverly Hills, 21 F.3d 1558, 1568 n. 21 (Fed. Cir. 1994)* (Plaintiff is not precluded from bringing suit in the forum state just because the bulk of the allegedly infringing sales may occur in other states.) Plaintiff would most conveniently obtain relief in California as its operations are located in this state. Also, California has a strong interest in providing relief for its corporate [*11] citizens and seeking redress for allegedly infringing activities occurring in this state. Thus, Plaintiff's interest in convenient relief and the forum's interest in resolving this dispute weigh strongly in favor of jurisdiction in California.

Moreover, the Court concludes that resolution of this dispute would not be any more efficient in Texas than in California. This Court's resolution of this case will spare Texas (as well as other states where the accused products have been sold) the burden of providing a forum for this dispute. There are no conflict of laws or state-specific social policies at stake here because the same body of federal patent law will govern the claims regardless of forum. Therefore, considerations of efficiency or social policies of the states do not weigh against the Court's assertion of jurisdiction in this matter.

Finally, Defendant argues that the *de minimis* nature of its interaction with the state of California and the burden it will bear if forced to litigate here weigh strongly in favor of a finding that jurisdiction does not exist in California. The Court does not agree. Defendant conducts a purposeful ongoing business relationship with corporations located [*12] in California and, through its marketing activities, makes efforts to continue these contacts. The Court, therefore, finds that Defendant's contacts with California are not so negligible that Defendant's level of contacts weighs against jurisdiction. [3] Al-

EXHIBIT 3 - Page 14

2008 U.S. Dist. LEXIS 24310, *

so, although litigating this suit in California will be more burdensome to Defendant than litigating in its home state of Texas, the Court finds that Plaintiff has not produced evidence that establishes more than the usual inconvenience of litigating in an out-of-state forum chosen by the Plaintiff. Defendant asserts that its offices and personnel are located in Texas and that numerous documents would need to be produced in California. These inconveniences do not amount to a significant or compelling showing of burden given the current state of technology in communication and transportation and the relative proximity of Texas and California. *World-Wide Volkswagen, 444 U.S. at 294.* For the above reasons, the Court concludes that specific jurisdiction over Defendant exists in this case. [4] The Court therefore DENIES Defendant's motion to dismiss for lack of personal jurisdiction.

> 3    Moreover, it is unclear whether the level of Defendant's [*13] contacts is a balancing factor in deciding the reasonableness of asserting jurisdiction pursuant to Federal Circuit law. *Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation, 297 F.3d 1343, 1355 (Fed. Cir. 2002).*
> 4    Because it finds that specific jurisdiction exists, the Court declines to reach the issue of whether general jurisdiction exists.

B. Defendant's Motion to Transfer Venue

As an alternative to its request for dismissal, Defendant also requests a transfer of venue to the Southern District of Texas. *28 U.S.C. § 1404(a)* provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Relevant factors considered in determining whether a transfer would be in the interest of justice are: 1) plaintiff's choice of forum; 2) convenience of parties; 3) convenience of witnesses; 4) relative ease of access to sources of proof; and 5) differences in the costs of litigating in the two forums. *Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1983); Jones v. GNC Franchising Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).*

Here,    [*14] Defendant argues that convenience factors strongly favor transfer to the Southern District of Texas for the following reasons: (1) Texas is a more convenient forum for non-party witnesses; (2) the records and documents regarding sales of the accused product are located in Houston, Texas; (3) Defendant is a much smaller corporation than Plaintiff and would be significantly burdened by the additional cost of defending in California; and 4) the Southern District of Texas

has a strong interest in resolving this dispute. The Court disagrees for the following reasons.

First, Defendant has failed to establish that the convenience of witnesses would be better served by transferring this case to the Southern District of Texas. Defendants identify fourteen individuals as key witnesses and assert that they live in the Houston, Texas area. (Ex. A, Frieden Decl. P7) Defendant also claims that Houston would be a more convenient location for customers and suppliers of SAT and also for the German manufacturers of the VIBTOOL device. (Ex. A, Frieden Decl. P7) Aside from claiming that the alleged "key witnesses" are either "knowledgeable about the features and characteristics" of Defendant's products [*15] or act as salespeople for these products, the Defendant has not provided information regarding the content of their proposed testimony. Defendant also does not provide information regarding the proposed testimony of customers and suppliers. The Court cannot therefore determine the extent to which the testimony of these individuals would be relevant and necessary in this action. Given this limited information, the Court can only conclude that it is likely that some key witnesses for the Defendant reside in Texas and just as likely that some key witnesses for Plaintiff reside in California. The Court also disagrees that Texas would be a more convenient forum for witnesses from the German manufacturer of the accused product. The Court finds that both Houston and San Diego would be equally inconvenient forums for these witnesses. While Texas is likely the more convenient forum for Defendant's witnesses, the Court cannot, given the present state of the record, determine that any one forum would be more convenient to the majority of the witnesses in this case.

Second, the Court also finds that Defendant has not established that the location of Defendant's records and documents weighs in favor [*16] of transfer. Although Defendant alleges that the relevant documents are located at its offices in Houston, Texas (Ex. A, Frieden Decl. P8), Defendant has not provided any information regarding the volume of the relevant documents and the difficulty involved in transporting these records and documents to California. Again, without more information, the Court cannot determine whether the transportation of documents and records necessary for trial would create a burden meriting a transfer of venue.

Third, Defendant argues that it is a much smaller corporation than Plaintiff and that defending this case in California would be a significant drain on the company's finances. The evidence demonstrates that Plaintiff has annual sales of approximately $ 50 million and belongs to a parent corporation with total sales of approximately $ 7.75 billion while Defendant is a small corporation with annual sales of approximately $ 10.5 million. (Frie-

EXHIBIT 3 - Page 15

den Decl. P 5, McGinn Decl.P 1) Defendant however has not provided information such as the projected additional costs of litigating in another forum and how that amount would compare to Defendant's overall operating expenses. Therefore, while litigating in [*17] San Diego may be more burdensome for Defendant, the Court is unable to find that Defendant has made a showing of burden significant enough to outweigh Plaintiff's choice of forum and California's interest in adjudicating this case.

Fourth, although the Court agrees that Texas has an interest in adjudicating the claims brought against its residents, it finds the state of California also has a compelling interest in providing redress for its corporate citizen who claims that its patent is being infringed in the state of California. For the reasons stated above, the Court finds that a transfer of venue to the Southern District of Texas would not serve the interests of justice.

C. Defendant's Motion to Stay

Defendant also seeks a motion to stay these proceedings pending a reexamination of the patent at issue. Courts have inherent power to stay an action pending conclusion of PTO reexamination proceedings. *Ethicon, Inc. v. Quigg, 849 F.2d 1422,1426-27 (Fed. Cir. 1988)*. The decision whether to grant or deny a motion to stay proceedings pending PTO reexamination rests within the sound discretion of the court. See, e.g., *Photoflex Products, Inc. v. Circa 3 LLC, 2006 U.S. Dist. LEXIS 37743, at [*18] *2-3 (N.D. Cal. May 24, 2006)*. There is a "liberal policy" in favor of granting motions to stay pending the outcome of PTO reexamination proceedings. *ASCII Corp. v. STD Entertainment USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)*. In determining whether to stay litigation pending reexamination by the PTO, courts generally consider the following factors: (1) the stage of litigation, i.e., whether discovery is almost complete and whether a trial date has been set; (2) whether a stay would cause undue prejudice or present a clear disadvantage to the non-moving party; and (3) whether a stay will simplify the issues in question and trial of the case. See, e.g., *Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)*.

First, the fact that this litigation has not progressed significantly weighs in favor of staying the action. As stated above, no trial date has been set. Only jurisdiction-related discovery has taken place in this matter and the only substantive motions filed have been the ones that are the subject of this order.

Second, the Court finds that a stay would not unduly prejudice Plaintiff. Plaintiff argues that Defendant's request for reexamination at this juncture [*19] is part of their dilatory tactics to prejudice Plaintiff. Plaintiff

claims that Defendant could have brought their request for reexamination sooner given that SAT was aware of the infringement allegations as early as October 2005 and had information regarding the prior patents that are the subject of the reexamination request as early as October 2006. (Berretta Decl. In Support of Opposition PP 5 - 6, Exs. 5-6) However, Defendant's failure to request reexamination during that time does not establish that it was acting with dilatory intent. The Court notes that Plaintiff could also have filed its complaint earlier if it were concerned about delay.

Plaintiff further points out that an average reexamination proceeding takes over twenty-one months and argues that this further delay will cause it irreparable harm in pursuing its right to enforce the patent. Although the Court agrees that such delays are typical, it disagrees with the argument that Plaintiff will suffer undue prejudice if a stay is entered. Where "Plaintiffs have an adequate remedy at law," there is no undue prejudice. *Broadcast, 2006 U.S. Dist. LEXIS 46623, at *32*. Here, Plaintiff does not specify any particular injury aside [*20] from a delay in collecting monetary damages and excluding SAT from use of its patent, assuming it ultimately wins. Plaintiff has made no showing that there is no adequate remedy at law i.e. that past monetary damages for any infringing activity could not fully compensate Plaintiff. While Plaintiff is rightfully concerned that a reexamination will significantly delay the prosecution of its patent infringement claims, the delay inherent in the reexamination process "does not constitute, by itself, undue prejudice." *Photoflex Prods. v. Circa 3 LLC, 2006 U.S. Dist. LEXIS 37743 at *5 (N.D. Cal. 2006)* citing *Pegasus Dev. Corp. v. DirecTV, Inc., 2003 U.S. Dist. LEXIS 8052 (D. Del. May 14, 2003)*. For the above reasons, the Court concludes that considerations of prejudice to the parties weigh in favor of granting a stay.

Finally, the Court finds that the stay will result in the simplification of issues in this case. As explained by the Federal Circuit, one "purpose of the reexamination procedure is to eliminate trial" of the issue of patent claim validity if the claim is canceled or "to facilitate trial of that issue by providing the district court with the expert view of the PTO" if a claim [*21] survives the reexamination proceeding. *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983)*, cert. denied, *464 U.S. 935, 104 S. Ct. 343, 78 L. Ed. 2d 310 (1983)*; *Broadcast, 2006 U.S. Dist. LEXIS 46623, at *9-10*. The Court believes that it will benefit from the PTO's evaluation of how the alleged prior art affects the validity of the '164 patent. The PTO's expert evaluation is likely to be of assistance not only as to the issues of validity, but its understanding of the claims is also likely to aid this Court in the preliminary process of claim construction. Accordingly, the Court finds that a reasonable stay is

EXHIBIT 3 - Page 16

2008 U.S. Dist. LEXIS 24310, *

appropriate to avoid the risk of unnecessary litigation and to permit the clarification of issues before this Court. However, if it appears that the reexamination will not be effected within a reasonable time (21-24 months), Plaintiff may move to vacate the stay. Additionally, any party may apply to the Court for an exception to the stay if it has valid reason to believe that it needs to obtain discovery in order to preserve evidence that will otherwise be unavailable after the stay.

Therefore, Defendant's motion to stay this proceeding is GRANTED without prejudice. Defendant is ordered to file  [*22] a notice informing the Court of the PTO's decision on the pending application for reexamination within 10 days of receipt of such decision.

**CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss for lack of personal jurisdiction, or in the alternative, motion for transfer of venue [Doc. No. 9] is DENIED. Defendant's motion to stay [Doc. No. 7] is GRANTED.

DATED: February 26, 2008

/s/ Barry Ted Moskowitz

Honorable Barry Ted Moskowitz

United States District Judge

EXHIBIT 3 - Page 17

# Exhibit 4

LEXSEE 2006 U.S. DIST. LEXIS 37743

**PHOTOFLEX PRODUCTS, INC., Plaintiff, v. CIRCA 3 LLC dba AMVONA.COM, Defendant.**

**No. C 04-03715 JSW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2006 U.S. Dist. LEXIS 37743*

**May 24, 2006, Decided**
**May 24, 2006, Filed**

**COUNSEL:** [*1] Photoflex Products, Inc., Plaintiff: Alfredo A. Bismonte, Bobby T. Shih, Daniel S. Mount, Mount & Stoelker, San Jose, CA; Michael J. Hughes, Intellectual Property Law Offices, Campbell, Ca.

Circa 3 LLC, also known as, Amvona.com, Defendant: Warren J. Krauss, Detert Moran & Arnold, San Francisco, CA; James Yuanxin Li, Sedgwick Detert Moran & Arnold, San Francisco, CA.

**JUDGES:** JEFFREY S. WHITE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JEFFREY S. WHITE

**OPINION**

**ORDER GRANTING IN PART AND DENYING IN PART AMENDED MOTION TO STAY LITIGATION**

Now before the Court is Defendant Circa 3 LLC dba Amvona.com's ("Amvona") motion to stay litigation during the pendency of reexamination of United States Patent 6,076,935 (the "'935 Patent"). The Court finds that this matter is appropriate for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for May 26, 2006 is HEREBY VACATED. Having considered the parties' pleadings and the relevant legal authority, the Court HEREBY GRANTS IN PART AND DENIES IN PART Defendant's motion to stay litigation. In this action, Plaintiff brings claims for copyright and patent infringement, as well we claims of unfair competition and [*2] false designation of origin, related to the manufacture and marketing of high quality photographic equipment. Count two of the second amended complaint for patent infringement is STAYED, but

Counts one, three and four for copyright infringement, false designation of origin and unfair competition are NOT STAYED.

**ANALYSIS**

**A. Legal Standards Applicable to a Motion to Stay Proceedings Pending Reexamination.**

The patent reexamination statute provides in pertinent part that "[a]ny person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art cited under the provisions of *section 301*." *35 U.S.C. § 302*. The PTO must "determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request. . . ." *35 U.S.C. § 303(a)*. The reexamination statute further provides that "[a]ll reexamination proceedings . . . including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special dispatch." *35 U.S.C. § 305*.

The determination of whether to grant a stay pending the [*3] outcome of the PTO's reexamination is soundly within the Court's discretion. *See Tap Pharm. Prods. Inc. v. Atrix Labs. Inc., 70 U.S.P.Q. 2d 1319, 1320 (N.D. Ill. 2004)* (citing *Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed. Cir. 1983))*. When ruling on such a stay, courts consider several factors: (1) the stage of the litigation, including whether discovery is or will be almost completed and whether the matter has been marked for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court. *Id.; Methode Elecs., Inc. v. Infineon Techs. Corp., No. 99-21142, 2000 U.S. Dist. LEXIS 20689, at *5-6 (N.D.*

EXHIBIT 4 - Page 18

2006 U.S. Dist. LEXIS 37743, *

*Cal. Aug. 7, 2000).* There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *ASCII Corp. v. STD Entertainment, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).*

**B. Early Stage of Litigation Favors a Stay of the Patent Claim.**

Here, the early [*4] stage of this litigation weighs in favor of granting a stay of the patent infringement portion of the case. *See Target Therapeutics, Inc. v. SciMed Life Sys., Inc., 33 U.S.P.Q. 2d 2022, 2023 (N.D. Cal. 1995)* (holding that the absence of "significant discovery" or "substantial expense and time . . . invested" in the litigation weighed in favor of staying the litigation); *see also ASCII Corp., 844 F. Supp. at 1381* (granting stay where parties had undertaken little or no discovery and the case had not yet been set for trial). Here, discovery has just begun. Amvona has served 14 interrogatories and 29 requests for production of documents and Photoflex has served 16 interrogatories and 5 requests for production of documents. No depositions have been taken or scheduled. (*See* Declaration of James Yuanxin Li ("Li Decl."), P 2.) Therefore, the fact that this case is still in the early stages and the parties have not yet conducted "significant discovery" or invested "substantial expense" into the litigation weighs in favor of granting a stay. *See Target Therapeutics, 33 U.S.P.Q. 2d at 2023.*

**C. A Stay Will Not Unduly Prejudice Plaintiff.**

[*5] In determining whether to grant a stay, courts also consider any resulting undue prejudice on the nonmoving party. *See Methode Elecs., 2000 U.S. Dist. LEXIS 20689, at *7.* Granting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation. *Id.* The delay inherent to the reexamination process does not constitute, by itself, undue prejudice. *Pegasus Dev. Corp. v. DirecTV, Inc., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073, at *2 (D. Del. May 14, 2003).*

Courts also consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking reexamination of a patent. *Methode Elecs., 2000 U.S. Dist. LEXIS 20689, at *7.* This is not a case where reexamination is sought on the eve of trial or after protracted discovery. *Cf. Agar Corp., Inc. v. Multi-Fluid, Inc., 983 F. Supp. 1126, 1128 (S.D. Tex. 1997)* (finding that "courts are inclined to deny a stay when the case is set for trial and the discovery phase has almost been completed"). There has been no showing of dilatory motive or tactics.

Accordingly, te Court finds that a stay of the patent claim [*6] will not unduly prejudice Plaintiff, and thus this factor also weighs in favor of granting a stay.

**D. A Stay Will Simplify the Issues, Streamline the Trial, and Reduce the Burden of Litigation on Both the Parties and the Court.**

Because the patent-in-suit is currently being reexamined, the Court finds that the patent infringement case should be stayed during the pendency of the reexamination. The Court finds that such a stay will simplify the issues and streamline the trial, thereby reducing the burden on, and preserving the resources of both the parties and the Court.

However, in determining whether to grant a stay of an entire case, courts consider whether there would remain, after the PTO reexamination, issues "completely unrelated to patent infringement" for which a stay would not reduce the burden of litigation on both the parties and the court. *Imax Corp. v. In-Three, Inc., 385 F. Supp. 2d 1030, 1033 (C.D. Cal. 2005).* If such matters "would continue to be an issue . . . a stay would not preserve many resources." *Id.*

Here, in addition to the patent infringement claim, Plaintiff brings claims for copyright infringement, false designation of origin [*7] and unfair competition. Simply arguing these claims have no merit, Defendant has failed to address whether there are significant overlapping issues between the patent claim and these other claims whereby a stay of the other claims would reduce the burden of litigation on both the parties and the Court. Thus, the Court finds that Defendant has made no showing upon which the Court could find a stay of those separate causes of action would be justified.

Therefore, having considered the factors relevant in determining whether to grant a stay pending reexamination, the Court hereby GRANTS Amvona's motion to stay the patent infringement portion of this case but DENIES the motion as to the remaining claims.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Amvona's motion to stay. Count two for patent infringement is stayed from the date of this Order until further notice with the exception of activities relating to or arising out of the judicial settlement conference currently schedule before Magistrate Judge Wayne D. Brazil on May 25, 2006. The Court HEREBY ORDERS the parties to submit a joint status report regarding the status of the reexamination [*8] proceedings every 120 days, or sooner if the PTO issues a final decision with respect to any of the '935 Patent, until the stay of the patent infringement claim is lifted.

EXHIBIT 4 - Page 19

2006 U.S. Dist. LEXIS 37743, *

The Court DENIES the request for a stay as to counts one, three and four.

**IT IS SO ORDERED.**

Dated: May 24, 2006

JEFFREY S. WHITE

UNITED STATES DISTRICT JUDGE

EXHIBIT 4 - Page 20

# Exhibit 5

LEXSEE 2007 U.S. DIST. LEXIS 18785

**NANOMETRICS, INC., Plaintiffs, v. NOVA MEASURING INSTRUMENTS, LTD., et al., Defendants.**

**No. C 06-2252 SBA**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

*2007 U.S. Dist. LEXIS 18785*

**February 26, 2007, Decided
February 26, 2007, Filed**

**COUNSEL:** [*1] For Nanometrics Incorporated a Delaware Corporation, Plaintiff: Alfredo A. Bismonte, Justin T. Beck, Ronald Craig Finley, LEAD ATTORNEYS, Jeremy Michael Duggan, Beck, Ross, Bismonte & Finley, LLP, San Jose, CA.

For Nova Measuring Instruments, LTD., Nova Measuring Instruments, Inc., Defendants: David Schnapf, LEAD ATTORNEY, Nathaniel Philip Bruno, Neil A. Smith, Sheppard, Mullin, Richter & Hampton LLP, San Francisco, Ca.

For Nova Measuring Instruments, LTD., Nova Measuring Instruments, Inc., Counter-claimants: David Schnapf, LEAD ATTORNEY, Nathaniel Philip Bruno, Neil A. Smith, Sheppard Mullin Richter & Hampton LLP, San Francisco, CA.

For Nanometrics Incorporated a Delaware Corporation, Counter-defendant: Alfredo A. Bismonte, Justin T. Beck, Ronald Craig Finley, LEAD ATTORNEYS, Jeremy Michael Duggan, Beck, Ross, Bismonte & Finley, LLP, San Jose, CA.

For Nova Measuring Instruments, LTD., Nova Measuring Instruments, Inc., Counter-claimants: Nathaniel Philip Bruno, Sheppard Mullin Richter & Hampton LLP, San Francisco, CA.

**JUDGES:** Saundra Brown Armstrong, United States District Judge.

**OPINION BY:** Saundra Brown Armstrong

**OPINION**

**ORDER**

[Docket No. 32]

Before the Court is defendants [*2] Nova Measuring Instruments, Ltd. and Nova Measuring Instruments, Inc.'s (collectively "Nova") Motion to Stay Proceedings Pending the Re-examination of the Patent-in-Suit [Docket No. 32]. After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing. For the reasons that follow, the Court GRANTS Nova's motion.

**BACKGROUND**

On March 29, 2006, plaintiff Nanometrics, Inc. filed a complaint alleging that Nova is infringing on *Patent No. 34,783* ('783). The parties are competitors in the business of inventing, designing, manufacturing, and marketing systems that monitor, measure, and control processes for the semiconductor manufacturing industry. On May 22, 2006, Nova counterclaimed.

The *'783 patent* is the only patent in dispute. The *'783 patent* issued in 1991 and expires on February 1, 2010. On December 7, 2006, the United States Patent and Trademark Office (PTO) granted Nova's request for re-examination of the *'783 patent*. In light of the PTO granting a re-examination of the *'783 patent*, Nova requests the Court stay all proceedings.

**LEGAL STANDARDS**

Re-examination is a procedure by which any [*3] person can request that the PTO re-examine or re-evaluate the patentability of an unexpired United States patent. *See 35 U.S.C. § 302; see also Broadcast Innovation, L.L.C. v. Charter Commc'ns., Inc., 2006 U.S. Dist. LEXIS 46623, 2006 WL 1897165, at *1 (D. Colo. 2006).* "Congress instituted the reexamination process to shift the burden or reexamination of patent validity from

EXHIBIT 5 - Page 21

2007 U.S. Dist. LEXIS 18785, *

the courts to the PTO. Patent validity is a commonly asserted defense in litigation and courts are cognizant of Congress's intention of utilizing the PTO's specialized expertise to reduce costly and timely litigation." *Canady v. Erbe Elektronedizin GmbH, 271 F. Supp. 2d 64, 78 (D.D.C. 2002)* (citations omitted).

Courts are not required to stay judicial proceedings pending re-examination of a patent. It is, however, within a district court's discretion to do so. *See, e.g., Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)* (citations omitted) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO examination"); *Patlex Corp. v. Mossinghoff, 758 F.2d 594, 603 (Fed. Cir. 1985);* [*4] *Telemac Corp. v. Teledigital, Inc., 450 F. Supp. 2d 1107, 1110 (N.D. Cal. 2006).* There is "a liberal policy in favor of granting motions to stay proceedings pending the outcome" of re-examination, especially in cases that are still in the initial stages of litigation and where there has been little or no discovery. *ASCII Corp. v. STD Entm't USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994); see also Robert H. Harris Co. v. Metal Mfg. Co., 19 U.S.P.Q. 2d 1786, 1788 (E.D. Ark. 1991)* ("[t]he legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally granting stays").

In determining whether to grant a stay pending re-examination, courts consider: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See Telemac, 450 F. Supp. 2d at 1110; KLA-Tencor Corp. v. Nanometrics, Inc., 2006 U.S. Dist. LEXIS 15754, 2006 WL 708661, at *2 (N.D. Cal. 2006);* [*5] *IMAX Corp. v. In-Three, Inc., 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005).* A trial court's order staying an infringement suit pending the completion of re-examination proceedings is not appealable. *See Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed. Cir. 1983), cert. denied, 464 U.S. 935, 104 S. Ct. 343, 78 L. Ed. 2d 310 (1983).*

## ANALYSIS

Nova contends that the re-examination process will either make this litigation moot, or it will significantly narrow the issues for resolution. Nanometrics counters that "[a] stay is not warranted because it would merely delay the day of reckoning." Docket No. 38, at 2. Moreover, Nanometrics asserts that Nova has in the past made multiple re-examination requests of patents held by Nanometrics which have largely been unsuccessful.

### 1. Stage of Litigation

Nova's request for stay comes approximately nine months after the patent infringement claim was brought against it. This litigation is, however, still in the early stages. The parties exchanged initial disclosures on November 30, 2006, and a case management conference was held on December 6, 2006. Discovery has commenced, but it has not proceeded beyond [*6] this point. No briefing on claim construction has been filed. No dispositive motions have been submitted. And as currently scheduled, trial will not commence until April 28, 2008, at the earliest. This being the early stage of litigation weighs in favor of granting a stay. *See, e.g., KLA-Tencor, 2006 U.S. Dist. LEXIS 15754, 2006 WL 708661, at *2* (granting stay where discovery had just begun); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc., 33 U.S.P.Q 2d 2022, 2023 (N.D. Cal. 1995)* (holding that the absence of significant discovery or substantial expense and time invested in the litigation weighed in favor of stay); *ASCII Corp. v. STD Entm't USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)* (granting stay where the parties had undertaken little or no discovery).

### 2. Simplification of the Issues for Trial

There is little doubt that should the PTO find the '783 patent invalid, this action will be rendered moot. *See 35 U.S.C. § 307(a)* (a decision by the PTO that the re-examined claims of an issued patent are canceled as unpatentable renders the claims unenforceable in the pending litigation and in any future disputes). [*7] Moreover, if the PTO should narrow any of the five claims of the '783 patent, the scope of this litigation may be significantly altered and/or simplified. Statistically, there is a good chance that the PTO will do one of these two things. The PTO cancels all claims in approximately twelve percent of all re-examinations, and changes some claims in approximately sixty-four percent. *See KLA-Tencor, 2006 U.S. Dist. LEXIS 15754, 2006 WL 708661, at *4; see also Broadcast Innovation, L.L.C. v. Charter Commc'ns., Inc., 2006 U.S. Dist. LEXIS 46623, 2006 WL 1897165, at *8 n.8 (D. Colo. 2006)* (there is a 74% chance that the PTO will eliminate, amend, or otherwise limit the claims at issue).

Waiting for the outcome of the re-examination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate the trial by providing the Court with the opinion of the PTO and clarifying the scope of the claims. *See Target Therapeutics, 33 U.S.P.Q 2d at 2023; see also Pegasus Dev. Corp. v. DirecTV, Inc., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073, at *2 (D. Del. 2003)* (benefits of granting a stay pending re-examination include potentially narrowing the issues, reducing the complexity and [*8] length of trial, alleviating discovery problems relating to prior art, and en-

EXHIBIT 5 - Page 22

Case 3:08-cv-01256-BTM-CAB    Document 12-4    Filed 08/13/2008    Page 31 of 48

Page 3
2007 U.S. Dist. LEXIS 18785, *

couraging settlement or even dismissal if the patent is declared invalid); *Loffland Bros. Co. v. Mid-Western Energy Corp.*, 225 U.S.P.Q. 886, 887 (W.D. Okla. 1985). Along these same lines, if the PTO finds some or all of the claims of the patent are invalid, the Court will have wasted resources and the parties will have spent funds addressing an invalid claim or claims if this action goes to trial prior to the re-examination. *See Softview Computer Prods. Corp. v. Haworth, Inc.*, 56 U.S.P.Q. 2d 1633, 1636 (S.D.N.Y. 2000). On the other hand, if the PTO upholds the validity of the re-examined patent, this is strong evidence that a district court must consider in assessing whether the party asserting invalidity has met its burden of clear and convincing evidence. *See Custom Accessories, Inc. v. Jeffrey-Allan Industries, Inc.*, 807 F.2d 955, 961 (Fed. Cir. 1986); *Broadcast Innovation, 2003 U.S. Dist. LEXIS 46623, 2006 WL 1897165, at *2 (D. Colo. 2006).* Accordingly, the second factor also weighs in favor of granting a stay.

### 3. Undue Prejudice or Clear Tactical Disadvantage [*9] to Nanometrics

One of Nanometrics's objections to a stay is that "it would merely delay the day of reckoning." Docket No. 38, at 2. It expresses concern that the *'783 patent* is nearing its expiration date of 2010. By statute, the PTO is required to conduct re-examination proceedings with "special dispatch." *See 35 U.S.C. § 305.* Nevertheless, several courts have recognized that the re-examination process may be lengthy. *See, e.g., In re Cygnus Telecommc'ns. Tech. LLC Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) (finding that re-examinations generally take from six months to three years); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 n.1 (W.D.N.Y. 1999) (suggesting average pendency of re-examination before the PTO is 19.2 months, excluding appeals). Mere delay, without more though, does not demonstrate undue prejudice. Assuming the PTO does not cancel or substantively change the *'783 patent*, Nanometrics's potential recovery of damages will not be affected by the re-examination proceeding. *See Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998). Nanometrics will be able [*10] to recover for any infringement that occurs prior to 2010. In fact, if the PTO upholds the validity of the patent, then Nanometrics's position is strengthened, and its likelihood of monetary damages will increase. *See Broadcast Innovation, L.L.C., 2006 U.S. Dist. LEXIS 46623, 2006 WL 1897165, at *10.* Additionally, in this case there is a single patent. Some delay is more than off-set by increased

certainty of whether this single patent will survive re-examination and whether there will be any need for litigation.

Nanometrics also objects that, in essence, Nova has abused the re-examination process by utilizing it in other litigation between the parties. As Nanometrics characterizes it, Nova has placed 97 of Nanometrics's patent claims in the re-examination process, with only two claims being rejected and three amended. It appears, however, that Nanometrics is referring to a total of two patents that have been disputed in other cases, and both of these had claims cancelled or amended. This does not suggest a pattern of strategic abuse of the process by Nova.

More importantly, though, is that the re-examination process is a Congressionally created option of which any person or party may avail [*11] themselves. "Any person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art . . . ." *35 U.S.C. § 302.* Indeed, "[t]he stay of pending litigation to enable PTO review of contested patents was one of the specified purposes of the reexamination legislation." *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 606 (Fed. Cir. 1985). The fact that Nova has employed this statutory option does not itself suggest abuse of it.

Accordingly, Nanometrics has not shown that it will be unduly prejudiced by a stay or that it will it will be subject to a clear tactical disadvantage if a stay is imposed. Nova's motion will therefore be granted. Given the potential duration of the stay however, the motion is granted without prejudice to Nanometric's revisiting the issue with the Court should prejudice accrue, or if factual circumstances change warranting the Court's lifting the stay.

## CONCLUSION

IT IS HEREBY ORDERED THAT Nova's Motion to Stay Proceedings Pending the Reexamination of the Patent-in-Suit [Docket No. 32] is GRANTED.

IT IS SO ORDERED.

February 26, 2007

Saundra Brown Armstrong

[*12] United States District Judge

EXHIBIT 5 - Page 23

# Exhibit 6

LEXSEE 2007 U.S. DIST. LEXIS 76521

**HO KEUNG TSE, Plaintiff, v. APPLE INC. et al., Defendants.**

**No. C 06-06573 SBA**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA**

*2007 U.S. Dist. LEXIS 76521*

**October 4, 2007, Decided
October 4, 2007, Filed**

**SUBSEQUENT HISTORY:** Sanctions disallowed by,
Request denied by *Ho Keung Tse v. Apple Inc.,* 2008
*U.S. Dist. LEXIS 53662 (N.D. Cal., June 12, 2008)*

**COUNSEL:** [*1] For Ho Keung Tse, Plaintiff: Joseph
J Zito, LEAD ATTORNEY, ZITO tlp, Washington, DC;
Richard Brent Vaught, LEAD ATTORNEY, LAW OF-
FICE OF RICHARD B. VAUGHT, San Jose, CA.

For Apple Inc., Defendant: George Brian Busey, LEAD
ATTORNEY, Morrison and Foerster LLP, Washington,
DC; Francis Chung-Hoi Ho, Morrison and Foerster, San
Francisco, CA; Richard S. Hung, Morrison & Foerster
LLP, San Francisco, CA.

For Realnetworks, Inc., Napster, Inc., Defendants:
Charles Kramer Verhoeven, LEAD ATTORNEY, Quinn
Emanuel Urquhart Oliver & Hedges L, San Francisco,
Ca; Michael Ernest Williams, LEAD ATTORNEY,
Quinn Emanuel Urquhart Oliver & Hedges, Los Angeles,
CA; Richard Hull Doss, LEAD ATTORNEY, Quinn
Emanuel, Los Angeles, CA; Carl Gunnar Anderson,
Quinn Emanuel Urquhart Oliver and Hedges, LLP, San
Francisco, CA; Richard S. Hung, Morrison & Foerster
LLP, San Francisco, CA.

For MusicMatch, Inc., Defendant: Barbara Vining, Da-
vid J. Ball, Jr., Nicholas Philip Groombridge, Esq., Patri-
cia Young, Weil, Gotshal & Manges LLP, New York,
NY; Douglas E. Lumish, Weil Gotshal & Manges LLP,
Silicon Valley Office, Redwood Shores, CA; Herbert
Better, Zuckerman Spaeder LLP, Baltimore, MD; Ri-
chard S. Hung, Morrison & Foerster [*2] LLP, San
Francisco, CA.

For Sony Connect, Inc., Defendant: Frank L. Bernstein,
Kenyon & Kenyon, San Jose, CA; Michelle Carniaux,
Richard S Gresalfi, Kenyon and Kenyon, New York,

NY; Richard S. Hung, Morrison & Foerster LLP, San
Francisco, CA.

**JUDGES:** Saundra Brown Armstrong, United States
District Judge.

**OPINION BY:** Saundra Brown Armstrong

**OPINION**

**ORDER**

[Docket No. 78]

Before the Court is defendants Apple Inc., Music-
Match, Inc., Napster, Inc., RealNetworks, Inc. and Sony
Connect Inc.'s (collectively "Defendants") Motion to
Stay Proceedings Pending Reexamination of *U.S. Patent
No. 6,665,797* [Docket No. 78]. After reading and con-
sidering the arguments presented by the parties, the
Court finds this matter appropriate for resolution without
a hearing. For the reasons that follow, the Court
GRANTS Defendants' motion.

**BACKGROUND**

Plaintiff Ho Keung Tse filed the initial complaint in
this matter in the District of Maryland on August 5,
2005, alleging that all Defendants infringe *U.S. Patent
No. 6,665,797* ("the '797 patent"). Defendants' motion to
transfer the case to this Court was granted on October 20,
2006. The Court held an Initial Case Management Con-
ference and entered a Scheduling Order on January 25,
2007. Docket No. [*3] 41.

Tse served Preliminary Infringement Contentions
under *Patent Local Rule 3-1* on February 23, 2007. De-
fendants objected to these as inadequate and ultimately
moved to strike them on April 17, 2007. Docket No. 54.
In response, Tse stipulated to a stay of all scheduled

EXHIBIT 6 - Page 24

claim construction proceedings pending resolution of the dispute over his Preliminary Infringement Contentions. *See* Docket No. 64. Before that dispute was resolved, on July 24, 2007, Defendants filed a Request for Ex Parte Reexamination of the *'797 patent* with the United States Patent and Trademark Office (the "Request for Reexamination"). Hung Decl., Ex. C. On July 25, 2007, Defendants filed the instant motion to stay all proceedings pending the outcome of their Request for Reexamination.

## LEGAL STANDARDS

Reexamination is a procedure by which any person can request that the U.S. Patent and Trademark Office ("PTO") reexamine or reevaluate the patentability of an unexpired United States patent. *See 35 U.S.C. § 302; see also Broadcast Innovation, L.L.C. v. Charter Commc'ns., Inc., 2006 U.S. Dist. LEXIS 46623, 2006 WL 1897165, at \*1 (D. Colo. 2006).* "Congress instituted the reexamination process to shift the burden of reexamination of patent validity from [*4] the courts to the PTO. Patent validity is a commonly asserted defense in litigation and courts are cognizant of Congress's intention of utilizing the PTO's specialized expertise to reduce costly and timely litigation." *Canady v. Erbe Elektromedizin GmbH, 271 F. Supp. 2d 64, 78 (D.D.C. 2002)* (citations omitted).

Courts are not required to stay judicial proceedings pending re-examination of a patent; it is, however, within a district court's discretion to do so. *See, e.g., Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)* ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO examination." (citations omitted)); *Patlex Corp. v. Mossinghoff, 758 F.2d 594, 603 (Fed. Cir. 1985); Telemac Corp. v. Teledigital, Inc., 450 F. Supp. 2d 1107, 1110 (N.D. Cal. 2006).* There is "a liberal policy in favor of granting motions to stay proceedings pending the outcome" of reexamination, especially in cases that are still in the initial stages of litigation and where there has been little or no discovery. *ASCII Corp. v. STD Entm't USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994); see also Robert H. Harris Co. v. Metal Mfg. Co., 19 U.S.P.Q. 2d 1786, 1788 (E.D. Ark. 1991)* [*5] ("[t]he legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally granting stays").

In determining whether to grant a stay pending reexamination, courts consider: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See Telemac, 450 F. Supp. 2d at*

*1110; KLA-Tencor Corp. v. Nanometrics, Inc., 2006 U.S. Dist. LEXIS 15754, 2006 WL 708661, at \*2 (N.D. Cal. 2006); IMAX Corp. v. In-Three, Inc., 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005).*

A stay is particularly appropriate for cases in the initial stages of litigation or in which there has been little discovery. *See, e.g., KLA-Tencor, 2006 U.S. Dist. LEXIS 15754, 2006 WL 708661, at \*2* (fact that "discovery ha[d] just begun" favored stay pending reexamination). In light of the "liberal policy" favoring stays pending reexamination, a court can grant a stay even if the Patent Office is still considering whether to grant a party's reexamination request. *See, e.g., ASCII, 844 F. Supp. at 1381* (granting stay based [*6] on party's contemplated filing for reexamination); *Hewlett-Packard Co. v. Acuson Corp., 1993 U.S. Dist. LEXIS 6449, 1993 WL 149994, at \*4 (N.D. Cal. May 5, 1993)* (granting stay before Patent Office had granted reexamination request).

A trial court's order staying an infringement suit pending the completion of re-examination proceedings is not appealable. *See Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed. Cir. 1983), cert. denied, 464 U.S. 935, 104 S. Ct. 343, 78 L. Ed. 2d 310 (1983).*

## ANALYSIS

Defendants contend that reexamination will likely invalidate or narrow the asserted claims of the *'797 patent*, thereby mooting or simplifying the issues in this case. Defendants further note that none of the parties has served discovery, none of the parties has noticed or taken any depositions, no claim construction proposals or briefing have taken place, and no dispositive motions have been filed. Tse opposes the stay arguing that it is not in the interest of efficiency to stay these proceedings, that the reexamination is unlikely to result in any change to the claims of the patent at issue, that Defendants delayed in filing the Request for Reexamination, and that he will "suffer[] financial losses which are incalculable and can only be minimized [*7] if a final adjudication can be obtained from the court swiftly." Pl.'s 2nd [1] Opp'n Br. at 10.

1   Tse inexplicably filed two opposition briefs - one timely, and one "supplemental," filed three days after the deadline set by the Local Rules. *See* Docket Nos. 91 & 92.

### 1. Stage of Litigation

This litigation is still in its nascent stages. Discovery has opened, but has not proceeded in any material way. Apart from plaintiff's Preliminary Infringement Contentions, the sufficiency of which is still disputed by Defendants, the parties have not advanced discovery in this

EXHIBIT 6 - Page 25

2007 U.S. Dist. LEXIS 76521, *

case at all. Indeed, Tse has not even served the Initial Disclosures required under *Federal Rule of Civil Procedure 26(a)*, and the parties have not served any written discovery and have not noticed or taken any depositions. The parties also have not exchanged any proposed claim construction terms or supporting materials under the Patent Local Rules. No dispositive motions have been submitted, no briefing on claim construction has been filed, and no *Markman* hearing date or trial date has been set.

Plaintiff's characterization of this case as being at a "late stage," *see* Pl.'s 2nd Opp'n Br. at 8, is not well taken. To the contrary, [*8] nothing substantive beyond preliminary infringement contentions has been exchanged. Moreover, to the extent that there has been any delay in these proceedings, they appear to have been occasioned by Tse's own stipulation to stay various claim construction dates. *See* Docket No. 64. The present case does not present the sort of difficulties noted in *Soverain Software LLC v. Amazon.com, Inc., 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005)*, where a motion to stay was filed after a *Markman* hearing and only six months prior to trial.

This factor clearly favors a stay. *See Target Therapeutics, Inc. v. SciMed Life Sys., Inc., 33 U.S.P.Q. 2d 2022, 2023 (N.D. Cal. Jan. 13, 1995)* (granting stay where discovery had commenced, but not proceeded significantly); *ASCII, 844 F. Supp. at 1381* (granting stay where the parties had undertaken little or no discovery).

## 2. Simplification of the Issues for Trial

Should the PTO find the asserted claims of the '797 patent invalid, this action will be rendered moot. *See 35 U.S.C. § 307(a)*. Moreover, if the reexamination proceeding should narrow any of the asserted claims of the '797 patent, the scope of this litigation may be significantly simplified. Statistically, [*9] it is quite likely that the reexamination process will alter the patent claims at issue in some respect. Ninety-one percent of requests for reexaminations are granted, and the PTO cancels all claims in approximately twelve percent of all reexaminations and changes some claims in approximately sixty-four percent. *See KLA-Tencor, 2006 U.S. Dist. LEXIS 15754, 2006 WL 708661, at \*4; Broadcast Innovation, L.L.C. v. Charter Commc'ns., Inc., 2006 U.S. Dist. LEXIS 46623, 2006 WL 1897165, at \*8 n.8 (D. Colo. 2006)*.

Tse offers no cogent argument why staying these proceeding pending the outcome of the reexamination does not foster efficiency or is unlikely to simplify the issues for trial. Other than summarily stating that "the reexamination is highly unlikely to result in any substantial change to the claims of the patent at issue and unlikely to result in any change at all," Pl.'s 2nd Opp'n Br. at 2, which statement is directly contravened by the very

statistics above, cited by Tse himself, Tse does not identify any intelligible considerations militating in favor of denying a stay in this case.

Waiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate the trial by [*10] providing the Court with the opinion of the PTO and clarifying the scope of the claims. *See Target Therapeutics, 33 U.S.P.Q 2d at 2023; see also Pegasus Dev. Corp. v. DirecTV, Inc., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073, at \*2 (D. Del. 2003)* (benefits of granting a stay pending re-examination include potentially narrowing the issues, reducing the complexity and length of trial, alleviating discovery problems relating to prior art, and encouraging settlement or even dismissal if the patent is declared invalid); *see also Loffland Bros. Co. v. Mid-Western Energy Corp., 225 U.S.P.Q. 886, 887 (W.D. Okla. 1985)* (technical expertise provided by the reexamination proceeding, including a final determination by the PTO examiner, is "extremely helpful" to the Court).

Along these same lines, if the PTO finds some or all of the claims of the patent are invalid, the Court will have wasted resources and the parties will have spent funds addressing an invalid claim or claims if this action goes to trial prior to the re-examination. *See Softview Computer Prods. Corp. v. Haworth, Inc., 56 U.S.P.Q. 2d 1633, 1636 (S.D.N.Y. 2000)*. On the other hand, if the PTO upholds the validity of the re-examined patent, this is strong evidence [*11] that a district court must consider in assessing whether the party asserting invalidity has met its burden of clear and convincing evidence. *See Custom Accessories, Inc. v. Jeffery-Allan Indus., Inc., 807 F.2d 955, 961 (Fed. Cir. 1986); Broadcast Innovation, 2006 U.S. Dist. LEXIS 46623, 006 WL 1897165, at \*2 (D. Colo. 2006)*.

Tse's curious statement that "[a]llowing the present litigation to proceed in parallel with the re-examination . . . will benefit all the parties and the public interest by providing the most comprehensive review of the validity of [the '797 patent]," 2nd Opp'n Br. at 1, simply does not make sense, and is unsupported by both the facts and the impressive surfeit of caselaw favoring stays under similar circumstances. Accordingly, the second factor also weighs in favor of granting a stay.

## 3. Undue Prejudice or Clear Tactical Disadvantage to Nanometrics

Tse argues that Defendants have requested reexamination as a delay tactic. While, by statute, the PTO is required to conduct re-examination proceedings with "special dispatch," *see 35 U.S.C. § 305*, courts have recognized that the reexamination process may be lengthy.

EXHIBIT 6 - Page 26

2007 U.S. Dist. LEXIS 76521, *

*See, e.g., In re Cygnus Telecomms. Tech. LLC Patent Litig., 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005)* [*12] (finding that reexaminations generally take from six months to three years). Nevertheless, "[m]ere delay, without more though, does not demonstrate undue prejudice." *Nanometrics, 2007 U.S. Dist. LEXIS 18785, 2007 WL 627920, at *3.* Tse has not proffered any evidence suggesting that Defendants are actually requesting reexamination for the purpose of delay; they filed their request just three months after they served their Preliminary Invalidity Contentions and just two months after the early neutral evaluation session did not result in settlement. There is simply no indication that Defendants have requested reexamination as a dilatory tactic; this is not a case where, for example, a party has requested reexamination only after either an unfavorable ruling by the court or a favorable ruling by the PTO. *See, e.g., Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc., 2007 U.S. Dist. LEXIS 44107, 2007 WL 1655625, *6 (N.D. Cal. 2007)* (denying stay where party waited until it had had a trial, had litigated motions for judgment as a matter of law and for a new trial on the merits, and then had a favorable PTO action to request a stay).

The reexamination process is a Congressionally created option of which any person or party may avail themselves. [*13] "Any person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art . . . ." *35 U.S.C. § 302.* Indeed, "[t]he stay of pending litigation to enable PTO review of contested patents was one of the specified purposes of the reexamination legislation." *Patlex Corp. v. Mossinghoff, 758 F.2d 594, 606 (Fed. Cir. 1985).* The fact that Defendants have employed this statutory option does not in and of itself suggest abuse of it.

Additionally, Tse complains that he will "suffer[] financial losses which are incalculable and can only be minimized if a final adjudication can be obtained from the court swiftly." Pl.'s 2nd Opp'n Br. at 10. However, although Tse appears to argue that monetary damages will be an inadequate remedy, he does not provide any cogent explanation for why this is the case. Somewhat bizarrely, Tse claims that a stay may prejudice his recovery of potential damages from *non-parties* for their alleged patent infringement. In Tse's words: "There are hundreds of thousands of such infringing web businesses in USA [sic], some may last for just a very short time,

from a few months to a few years. And once any of them closed down, [*14] there may be no viable way to claim back the lost license fees." Pl.'s 2nd Opp'n Br. at 10. However, that allegedly infringing non-parties may go out of business has simply nothing to do with the instant proceedings. Those third parties are not parties to this litigation, nor does Tse explain why he is unable to pursue his claims against them now or how staying this case will deprive him of such claims. Moreover, if as Tse contends, reexamination will not result in any of his claims being cancelled or changed, any potential right to recovery of monetary damages will not be affected by the stay. *See Laitram Corp. v. NEC Corp., 163 F.3d 1342, 1346 (Fed. Cir. 1998)* (patentee of a reexamined patent is entitled to infringement for the period between the date of issuance of the original claims and the date of issuance of the reexamined claims if the original and reexamined claims are identical).

Accordingly, Tse has not shown that he will be unduly prejudiced or subject to a clear tactical disadvantage if a stay is imposed. *See Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc., 2006 U.S. Dist. LEXIS 46623, 2006 WL 1897165, at *11 (D. Colo. 2006)* (finding that where monetary damages are an adequate remedy this factor [*15] weighs in favor of staying the case pending reexamination). Defendants' motion should therefore be granted.

**CONCLUSION**

Defendants' Motion to Stay Proceedings Pending Reexamination of *U.S. Patent No. 6,665,797* [Docket No. 78] is GRANTED. All proceedings before the Court are stayed, including any discovery related to this case. The parties shall update the Court as to the status of the reexamination every 4 months, and the Court is to be notified immediately (i) upon the grant or denial of Defendants' Request for Reexamination and (ii) upon the completion of the reexamination proceedings.

IT IS SO ORDERED.

Dated: 10/4/07

Saundra Brown Armstrong

United States District Judge

EXHIBIT 6 - Page 27

# Exhibit 7

LEXSEE 2008 U.S. DIST. LEXIS 6454

**JENS ERIK SORENSEN, Plaintiff, v. DIGITAL NETWORKS NORTH AMERICA INC.; LEGACY SUPPORT SERVICES, LTD. d/b/a S2G; and DOES 1 through 100, Defendants.**

**No. C 07-05568 JSW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2008 U.S. Dist. LEXIS 6454*

**January 16, 2008, Decided**
**January 16, 2008, Filed**

**COUNSEL:** [*1] For Jens Erik Sorensen, as Trustee of Sorensen Research and Development Trust, Plaintiff: James Michael Kaler, LEAD ATTORNEY, Kaler Law Offices, San Diego, CA; Melody Ann Kramer, LEAD ATTORNEY, Kramer Law Office, Inc., San Diego, CA.

For Digital Networks North America, Inc., a Delaware corporation, Defendant: Theodore K. Bell, LEAD ATTORNEY, Daniel John Richert, Pillsbury Winthrop Shaw Pittman LLP, Palo Alto, CA; Bradley J. Hulbert, PRO HAC VICE, McDonnell Boehnen Hulbert & Berghoff, Chicago, IL; Daniel John Richert, Pillsbury Winthrop Shaw Pittman LLP, Palo Alto, CA; Kurt William Rohde, PRO HAC VICE, Chicago, IL; Richard A. Machonkin, PRO HAC VICE, Attorney at Law, Chicago, IL.

**JUDGES:** JEFFREY S. WHITE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JEFFREY S. WHITE

**OPINION**

**ORDER GRANTING DEFENDANT'S MOTION TO STAY LITIGATION PENDING REEXAMINATION OF PATENT-IN-SUIT**

Now before the Court is Defendant Digital Networks North America Inc.'s ("DNNA") motion to stay litigation during the pendency of reexamination of *United States Patent 4,935,184* (the "'184 Patent"). The Court finds that this matter is appropriate for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for January 18, 2008 [*2] is HEREBY VACATED. Having considered the parties'

pleadings and the relevant legal authority, the Court HEREBY GRANTS DNNA's motion to stay litigation.

**BACKGROUND**

In this action, plaintiff Jens Erik Sorensen ("Sorensen") brings a claim for patent infringement of the *'184 Patent*. Sorensen filed this action on November 1, 2007 and served DNNA on November 12, 2007. On October 11, 2007, before this lawsuit was filed, the Patent and Trademark Office ("PTO") granted a request to reexamine the *'184 Patent*. (Declaration of Kurt W. Rhode ("Rhode Decl."), Ex. C.) The PTO notified Sorensen that newly submitted prior art resulted in thirteen "substantial questions of patenability" regarding the *'184 Patent*. (*Id.*) Maria DNNA now moves the Court to stay litigation in the above-captioned matter pending the PTO's reexamination of the *'184 Patent*. The Court shall address additional facts as necessary to its analysis in the remainder of this Order.

**ANALYSIS**

**A. Legal Standards Applicable to a Motion to Stay Proceedings Pending Reexamination.**

The patent reexamination statute provides in pertinent part that "[a]ny person at any time may file a request for reexamination by the [PTO] of any claim of a patent [*3] on the basis of any prior art cited under the provisions of *section 301*." *35 U.S.C. § 302*. The PTO must "determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request . . . ." *35 U.S.C. § 303(a)*. The reexamination statute further provides that "[a]ll reexamination proceedings . . . including any appeal to the

EXHIBIT 7 - Page 28

2008 U.S. Dist. LEXIS 6454, *

Board of Patent Appeals and Interferences, will be conducted with special dispatch." *35 U.S.C. § 305.*

The determination of whether to grant a stay pending the outcome of the PTO's reexamination is soundly within the Court's discretion. *See Tap Pharm. Prods. Inc. v. Atrix Labs. Inc., 70 U.S.P.Q. 2d 1319, 1320 (N.D. Ill. 2004)* (citing *Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed. Cir. 1983)).* When ruling on such a stay, courts consider several factors: (1) the stage of the litigation, including whether discovery is or will be almost completed and whether the matter has been marked for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation [*4] on the parties and on the court. *Id.; Methode Elecs., Inc. v. Infineon Techs. Corp., 2000 U.S. Dist. LEXIS 20689, at *5-6 (N.D. Cal. Aug. 7, 2000).* There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USP-TO reexamination or reissuance proceedings." *ASCII Corp. v. STD Entertainment, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).*

**B. Early Stage of the Litigation Favors a Stay.**

Here, the early stage of this litigation weighs in favor of granting a stay pending reexamination. *See Target Therapeutics, Inc. v. SciMed Life Sys., Inc., 33 U.S.P.Q. 2d 2022, 2023 (N.D. Cal. 1995)* (holding that the absence of "significant discovery" or "substantial expense and time . . . invested" in the litigation weighed in favor of staying the litigation); *see also ASCII Corp., 844 F. Supp. at 1381* (granting stay where parties had undertaken little or no discovery and the case had not yet been set for trial). Here, discovery has not even begun and DNNA has not yet responded to the complaint. The Court has not yet set any deadlines in this action regarding discovery, motions, or trial. Therefore, the fact that this case is still in the early stages and the [*5] parties have not yet conducted "significant discovery" or invested "substantial expense" into the litigation weighs in favor of granting a stay. *See Target Therapeutics, 33 U.S.P.Q. 2d at 2023.*

**C. A Stay Will Not Unduly Prejudice Sorensen.**

In determining whether to grant a stay, courts also consider any resulting undue prejudice on the nonmoving party. *See Methode Elecs., 2000 U.S. Dist. LEXIS 20689, at *7.* Granting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation. *Id.* The delay inherent to the reexamination process does not constitute, by itself, undue prejudice. *Pegasus Dev.*

*Corp. v. DirecTV, Inc., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073, at *2 (D. Del. May 14, 2003).*

Courts also consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking reexamination of a patent. *Methode Elecs., 2000 U.S. Dist. LEXIS 20689, at *7.* This is not a case where reexamination is sought on the eve of trial or after protracted discovery. *Cf. Agar Corp., Inc. v. Multi-Fluid, Inc., 983 F. Supp. 1126, 1128 (S.D. Tex. 1997)* (finding that "courts are inclined to deny a stay when the case is set for trial and the [*6] discovery phase has almost been completed"). Rather, another party filed the request to reexamine the '*184 Patent*, and the request was granted even before Sorensen filed the instant lawsuit. DNNA promptly sought to stay this action pending the reexamination proceedings. The Court finds that Sorensen has not presented any evidence of dilatory motives or shown that he would be unduly prejudiced or tactically disadvantaged if this Court were to grant a stay. Although Sorensen presents concerns that his ability to conduct discovery may be impaired by the delay in litigation, the Court finds that DNNA has submitted sufficient evidence to allay such concerns. Accordingly, the Court finds that a stay will not unduly prejudice Sorensen, and thus, this factor also weighs in favor of granting a stay

**D. A Stay Will Simplify the Issues, Streamline the Trial, and Reduce the Burden of Litigation on Both Parties and the Court.**

Because the patent-in-suit is currently being reexamined, the Court finds that this patent infringement action should be stayed during the pendency of the reexamination. The Court finds that such a stay will simplify the issues and streamline the trial, thereby reducing the burden [*7] on, and preserving the resources of both the parties and the Court.

Therefore, having considered the factors relevant in determining whether to grant a stay pending reexamination, the Court hereby GRANTS DNNA's motion to stay all proceedings pending reexamination of the '*184 Patent*.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS DNNA's motion to stay pending reexamination of the '*184 Patent*. The proceedings are stayed from the date of this Order until further notice. The Court HEREBY ORDERS the parties to submit a joint status report regarding the status of the reexamination proceedings every 120 days, or sooner if the PTO issues a final decision with respect to the '*184 Patent*, until the stay in this case is lifted.

EXHIBIT 7 - Page 29

Page 3

2008 U.S. Dist. LEXIS 6454, *

**IT IS SO ORDERED.**

    Dated: January 16, 2008

/s/ Jeffrey S. White

JEFFREY S. WHITE

UNITED STATES DISTRICT JUDGE

EXHIBIT 7 - Page 30

# Exhibit 8

LEXSEE 2006 U.S. DIST. LEXIS 15754

**KLA-TENCOR CORPORATION, a Delaware corporation, Plaintiff, v. NANO-METRICS, INC., a California corporation, Defendant.**

**No. C 05-03116 JSW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2006 U.S. Dist. LEXIS 15754*

**March 16, 2006, Decided**
**March 16, 2006, Filed**

**COUNSEL:** [*1] For KLA-Tencor Corporation, a Delaware corporation, Plaintiff: Michael N. Edelman, Michael H. Kalkstein, Ben (Harmohinder) S. Bedi, Daniel T. McCloskey, Dechert, LLP, Palo Alto, CA.

For Nanometrics Inc., a California corporation, Defendant: Peter H. Kang, Matthew Laurence McCarthy, Teague I. Donahey, Sidley Austin LLP, San Francisco, CA.

**JUDGES:** JEFFREY S. WHITE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JEFFREY S. WHITE

**OPINION**

**ORDER GRANTING DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS PENDING REEXAMINATION OF PATENTS-IN-SUIT**

Now before the Court is Defendant Nanometrics, Inc.'s ("Nanometrics") Motion to Stay Proceedings Pending Reexamination of Patents-in-Suit. Having considered the parties' pleadings, relevant legal authority, and the parties' arguments at the hearing on this matter, the Court HEREBY GRANTS Defendant's motion and STAYS ALL PROCEEDINGS with respect to all patents-in-suit.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff KLA-Tencor Corporation ("KLA-Tencor"), the assignee of *United States Patents Nos. 6,483,580* ("the *580 patent*") and 6,590,656 ("the 656 patent"), brought this action claiming that Nanometrics had infringed these patents by manufacturing, offering [*2] for sale and/or selling six devices, including but not limited to the Atlas metrology system and/or other me-

trology systems. (Declaration of Michael N. Edelman in Support of KLA-Tencor's Opposition to Stay ("Edelman Decl."), Ex. A at 2-3; Declaration of Edward V. Anderson in Support of Motion to Stay Pending Reexamination ("Anderson Decl. 1"), Ex. A at 1.) KLA-Tencor then filed a first amended complaint adding a cause of action for infringement of *United States Patent No. 6,611,330* ("the *330 patent*"). (Edelman Decl., Ex. H.)

This litigation is in the early stages. Both parties have propounded, and one has responded to, their first set of requests for production of documents. (*See* Declaration of Edward V. Anderson in Support of Motion to Stay and *Ex Parte* Motion to Shorten Time ("Anderson Decl. 2"), Ex. 4; *see also* Edelman Decl., Exs. L-N.) The tutorial has been set for August 22, 2006, but no trial date has yet been set. Magistrate Judge Spero has established a schedule for an exchange of discovery plans and a date and time for a discovery conference. Neither claim construction briefing nor discovery has occurred on the *330 patent* infringement cause of action that KLA-Tencor [*3] has recently added.

On December 21, 2005, the United States Patent & Trademark Office ("PTO") granted Nanometrics's requests for reexamination of the *580 patent* and the 656 patent. (Anderson Decl. 2, Exs. 1, 2.) On February 21, 2006, Nanometrics filed a request for reexamination of the *330 patent* with the PTO. (Nanometrics's Notice of New Authorities, Ex. A.)

On January 6, 2006, Nanometrics filed the instant motion. Nanometrics moves the Court for a stay of all proceedings, including the litigation as to the *330 patent* infringement cause of action, pending the reexamination of the *580* and 656 patents. (Mot. at 2.) KLA-Tencor urges this Court to deny Nanometrics's motion on the following grounds: (1) a stay should not be entered where the reexamination does not implicate all pa-

EXHIBIT 8 - Page 31

2006 U.S. Dist. LEXIS 15754, *

tents-in-suit; (2) considerations of judicial efficiency militate in favor of permitting discovery on the infringement of all patents-in-suit; (3) a stay would substantially prejudice KLA-Tencor and unnecessarily delay the action given the slow pace of PTO reexamination proceedings; and (4) a stay would put KLA-Tencor at a clear tactical disadvantage.

## ANALYSIS

### A. Legal Standards Applicable to [*4] a Motion to Stay Proceedings Pending Reexamination.

The patent reexamination statute provides in pertinent part that "[a]ny person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art cited under the provisions of *section 301*." *35 U.S.C. § 302*. The PTO must "determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request. . . ." *35 U.S.C. § 303(a)*. The reexamination statute further provides that "[a]ll reexamination proceedings . . . including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special dispatch." *35 U.S.C. § 305*.

The determination of whether to grant a stay pending the outcome of the PTO's reexamination is soundly within the Court's discretion. *See Tap Pharm. Prods. Inc. v. Atrix Labs. Inc., 70 U.S.P.Q. 2d 1319, 1320 (N.D. Ill. 2004)* (citing *Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed. Cir. 1983))*. When ruling on such a stay, courts consider several factors: (1) the stage of the litigation, [*5] including whether discovery is or will be almost completed and whether the matter has been marked for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court. *Id.; Methode Elecs., Inc. v. Infineon Techs. Corp., No. 99-21142, 2000 U.S. Dist. LEXIS 20689, at *5-6 (N.D. Cal. Aug. 7, 2000)*. There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USP-TO reexamination or reissuance proceedings." *ASCII Corp. v. STD Entertainment, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)*.

### B. The Early Stage of the Litigation Weighs in Favor of Granting a Stay.

The early stage of a litigation weighs in favor of granting a stay pending reexamination. *See Target Therapeutics, Inc. v. SciMed Life Sys., Inc., 33 U.S.P.Q. 2d 2022, 2023 (N.D. Cal. 1995)* (holding that the absence of "significant discovery" or "substantial expense and time . . . invested" in the litigation weighed in favor of staying the litigation); [*6] *see also ASCII Corp., 844 F. Supp.*

*at 1381* (granting stay where parties had undertaken little or no discovery and the case had not yet been set for trial). Here, discovery has just begun. Nanometrics and KLA-Tencor have each propounded their first set of requests for the production of documents, and Nanometrics has responded to KLA-Tencor's first set of requests. (*See* Anderson Decl. 2, Ex. 4; Edelman Decl., Exs. L-N.) Magistrate Judge Spero just recently laid out a schedule for an exchange of discovery plans. Neither party has conducted any discovery with respect to the *330 patent*-in-suit. The tutorial has been set for August 22, 2006, but no trial date has been set. Therefore, the fact that this case is still in the early stages and the parties have not yet conducted "significant discovery" or invested "substantial expense" into the litigation weighs in favor of granting a stay. *See Target Therapeutics, 33 U.S.P.Q. 2d at 2023*.

### C. A Stay Will Not Unduly Prejudice KLA-Tencor.

In determining whether to grant a stay, courts also consider any resulting undue prejudice on the nonmoving party. *See Methode Elecs., 2000 U.S. Dist. LEXIS 20689, [*7] at *7*. Granting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation. *Id.* KLA-Tencor correctly notes that "the average time for the completion of a reexamination is approximately 18.2 months," excluding appeals. *Rohm and Haas Co. v. Brotech Corp., 24 U.S.P.Q. 2d 1369, 1372 (D. Del. 1992)*. However, parties having protection under the patent statutory framework may not "complain of the rights afforded to others by that same statutory framework." *Pegasus Dev. Corp. v. DirecTV, Inc., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073, at *2 (D. Del. May 14, 2003)*. Nanometrics "is legally entitled to invoke the reexamination process," and the PTO has already determined to reexamine two of the three patents-in-suit. *See id.* Moreover, if after reexamination the PTO again upholds KLA-Tencor's patents, this will only strengthen KLA-Tencor's rights because Nanometrics's burden of proof becomes more onerous. *See id.* Under such circumstances, the delay inherent to the reexamination process does not constitute, by itself, undue prejudice. *See id.*

As a result, courts also consider evidence of dilatory [*8] motives or tactics, such as when a party unduly delays in seeking reexamination of a patent. *Methode Elecs., 2000 U.S. Dist. LEXIS 20689, at *7*. KLA-Tencor has failed to show, beyond the delay implicit in the reexamination process, how it would be unduly prejudiced or tactically disadvantaged if this Court were to grant a stay. In particular, the Court finds no evidence of dilatory tactics on Nanometrics's part in seeking reexamination at this early stage of the litigation. This is not

EXHIBIT 8 - Page 32

2006 U.S. Dist. LEXIS 15754, *

a case where reexamination is sought on the eve of trial or after protracted discovery. *Cf. Agar Corp., Inc. v. Multi-Fluid, Inc., 983 F. Supp. 1126, 1128 (S.D. Tex. 1997)* (finding that "courts are inclined to deny a stay when the case is set for trial and the discovery phase has almost been completed"). Rather, KLA-Tencor filed its complaint on August 1, 2005, the PTO granted Nanometrics's requests to reexamine the *580* and *656* patents on December 21, 2005, and Nanometrics filed its motion to stay proceedings on January 6, 2006. (Edelman Decl., Ex. A at 4; Anderson Decl. 2, Exs. 1, 2.) In addition, KLA-Tencor filed a stipulation and proposed order seeking to add the [*9] *330 patent* on January 26, 2006, and Nanometrics filed a request for reexamination of the *330 patent* on February 21, 2006. (Nanometrics, Inc.'s Notice of New Authorities, Ex. A.) This does not evince dilatory motives. Furthermore, KLA-Tencor will be fully compensated for delays if it prevails at reexamination and trial. *See Brown v. Shimano Am. Corp., 18 U.S.P.Q. 2d 1496, 1496 (C.D. Cal. 1991)*. Thus, because a stay will not unduly prejudice KLA-Tencor, this factor also weighs in favor of granting a stay.

**D. A Stay Will Simplify the Issues, Streamline the Trial, and Reduce the Burden of Litigation on Both the Parties and the Court.**

The PTO is currently reexamining two of the three patents-in-suit and reviewing Nanometrics's request for reexamination of the third patent-in-suit. (Anderson Decl. 2, Exs. 1, 2; Nanometrics's Notice of New Authorities, Ex. A.) Statistical information regarding reexamination indicates that the PTO confirms all claims in approximately 24% of the cases, cancels all claims in approximately 12% of the cases, and changes some claims in approximately 64% of the cases. *Rohm and Haas, 24 U.S.P.Q. 2d at 1372*. These statistics [*10] "suggest that in a typical case there is a substantial probability a reexamination will have a major impact on the issues to be resolved in the litigation." *Id.* This is because "waiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate the trial by providing the court with the opinion of the PTO and clarifying the scope of the claims." *Target Therapeutics, 33 U.S.P.Q. 2d at 2023*; *see also Pegasus, 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073, at *1-2* (noting the benefits of granting a stay pending reexamination include potentially narrowing the issues, reducing the complexity and length of trial, alleviating discovery problems relating to prior art, and encouraging settlement or even dismissal if the patent is declared invalid).

When there are overlapping issues between the reexamined patents and other patents in suit, courts have found staying the entire case to be warranted. In *Methode*, for example, the court stayed the litigation of both

the reexamined and non-reexamined patents because the issues regarding the non-reexamined patent "may be narrowed or amended as a result of the [*11] PTO's decision." *Id.* Moreover, the *Methode* court stayed the litigation of both the reexamined and non-reexamined patents because "it appears that there are overlapping issues" in the infringement action of the two patents. *Id.* If the court stayed the litigation with respect to the reexamined patents-in-suit only, duplicative discovery could have resulted because there were likely to be common documents and witnesses in the infringement litigation of the two patents. *Id.*

Similarly, here, even though the PTO has not determined yet whether it will reexamine the *330 patent*, a stay of the entire suit is warranted because the reexamination of the *580* and *656* patents may significantly affect the litigation of the *330 patent*. First, at the hearing on the instant motion, KLA-Tencor conceded that it accuses the same Nanometrics products of infringement of all three patents-in-suit. Second, Nanometrics argued at the hearing on this matter, and KLA-Tencor did not dispute, that the only real difference in discovery would involve the deposition of the different inventor of the *330 patent*. Otherwise, as Nanometrics argued, the engineering and sales personnel deposed would be [*12] the same for all three patents-in-suit. Third, KLA-Tencor conceded at the hearing that there are overlapping issues between all three patents-in-suit. For example, the "first optics focusing a polarized sample beam of broadband radiation onto the surface of the sample" language of claim 28 of the *330 patent* overlaps with the "optics providing a sampling beam of polarized broadband radiation and directing the beam towards the structure at an oblique angle" language of claim 111 of the *580 patent*. Therefore, a stay will simplify the issues and streamline the trial, thereby reducing the burden on, and preserving the resources of both the parties and the Court.

Finally, in determining whether to grant a stay of an entire case, courts consider whether there would remain, after the PTO reexamination, issues "completely unrelated to patent infringement" for which a stay would not reduce the burden of litigation on both the parties and the court. *Imax Corp. v. In-Three, Inc., 385 F. Supp. 2d 1030, 1033 (C.D. Cal. 2005)*. If such matters "would continue to be an issue . . . a stay would not preserve many resources." *385 F. Supp. 2d 1030, 2005 U.S. Dist. LEXIS 24203, *6*.

Here, the only claims in the case are for [*13] patent infringement. Therefore, the Court finds that there are no issues in the case unrelated to patent infringement for which the PTO's expertise resulting from the reexamination process would not be helpful. Accordingly, the Court finds that a stay of the entire case pending reexamination of the *580* and *656* is warranted.

EXHIBIT 8 - Page 33

2006 U.S. Dist. LEXIS 15754, *

Therefore, having considered the factors relevant in determining whether to grant a stay pending reexamination, the Court hereby GRANTS Nanometrics's motion to stay all proceedings pending reexamination of the *580* and 656 patents.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Nanometrics's motion to stay pending reexamination of the *580* and 656 patents. The proceedings are stayed from the date of this Order until further notice. The Court HEREBY ORDERS the parties to submit a joint status report regarding the status of the reexamination proceedings every 120 days, or sooner if the PTO issues a final decision with respect to any of the patents-in-suit, until the stay in this case is lifted.

If the PTO grants Nanometric's application to reexamine the *330 patent* and the reexamination proceedings for the *330 patent* extend beyond those for [*14] the *580* and 656 patents, the Court will entertain a motion extend the stay at that time.

**IT IS SO ORDERED**.

Dated: March 16, 2006

JEFFREY S. WHITE

UNITED STATES DISTRICT JUDGE

EXHIBIT 8 - Page 34

# Exhibit 9

1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   JENS ERIK SORENSEN,                          CASE NO. 08CV60 BTM (CAB)
                                                   NO. 08CV70
12                            Plaintiff,           NO. 08CV71
                                                   NO. 08CV135
13                                                 NO. 08CV136
                                                   NO. 08CV 231
14        vs.                                      NO. 08CV233
                                                   NO. 08CV234
15                                                 NO. 08CV305
                                                   NO. 08CV306
16                                                 NO. 08CV 308
                                                   NO. 08CV309
17   RALLY MANUFACTURING INC.,                     NO. 08CV411

18                            Defendant.           ORDER GRANTING DEFENDANTS'
                                                   MOTION FOR STAY PENDING
19                                                 PATENT REEXAMINATION

20   and related cases.

21         For the reasons stated in the Court's order granting stay in  Sorensen v. Black and

22   Decker, 06cv1572, Docket No. 243 and on the record at the February 25, 2008 status

23   conference in Sorensen v. Helen of Troy, 07cv2278,  the Court  GRANTS without prejudice

24   Defendants' motion for stay.  The Court concludes that a reasonable stay is appropriate in

25   this case because the litigation is in its early stages, Plaintiff has not established undue

26   prejudice, and the reexamination will simplify issues for the Court and save expense for the

27   parties.  See, e.g., Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999).

28   However, if it appears that the reexamination will not be effected within a reasonable time,

                                          1
                                                                           07CV2278

EXHIBIT 9 - Page 35

1  Plaintiff may move to vacate the stay.  Defendants are advised to identify and submit any

2  relevant prior art that is not already being considered by the United States Patent Office as

3  soon as possible to facilitate the completion of the reexamination process within a

4  reasonable time period.

5          Additionally, any party may apply to the Court for an exception to the stay if it has

6  specific, valid reasons to believe that it needs to obtain discovery in order to preserve

7  evidence that will otherwise be unavailable after the stay. Defendant is ordered to file a

8  notice informing the Court of the PTO's decision on the pending application for reexamination

9  within 10 days of receipt of such decision.

10          All other pending motions in these cases are DENIED as premature. Requests Plaintiff

11  may renew these motions after the stay has been lifted.

12

13  IT IS SO ORDERED.

14

15  DATED:  April 25, 2008

16

17                                        Honorable Barry Ted Moskowitz
                                          United States District Judge
18

19

20

21

22

23

24

25

26

27

28

2                                          07CV2278

EXHIBIT 9 - Page 36